## E. F. HARDIN v. HENRY JOICE.

1. EXECUTION; *Levy; Waiver; Replevin.* Where a constable has an execution in his hands against M., and J. tells the constable that he has a wagon in his possession belonging to M., which was left in his possession by M. as a pledge and a security for the safe return of J.'s own wagon which is still in the possession of M., and J. takes the constable to where the wagon is, and points it out to him, and tells him that it is the absolute property of M., that there is no claim against it, and that the title thereto is as clear as a whistle, and then takes out of the wagon two articles, one of which he claims as his own, and the other he says belongs to another person, and the constable then levies upon the wagon and takes it from the possession of J., without any objection or protest from him, *held*, that J. by his words and acts waived, as between himself and the constable, all claim to or lien upon the wagon which he might have had at any time, and that the constable did not, by taking the wagon from the possession of J., render himself liable to an action of replevin to be brought by J.

2. ———— Where there is no sufficient evidence to sustain the verdict of the jury, the trial court should, upon proper motion therefor, grant a new trial; and where the trial court refuses to grant a new trial in such a case, it commits an error for which the judgment founded upon such verdict may be reversed by the supreme court, and cause remanded for a new trial.

*Error from Johnson District Court.*

REPLEVIN, brought by *Joice* against *Hardin*, to recover the possession of a certain wagon. Trial at June Term, 1877,

of the district court, and judgment for *Joice*. New trial refused, and *Hardin* brings the case here.

*A. Smith Devenney*, and *W. Quigley*, for plaintiff.
*Burris & Little*, for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought by Henry Joice against E. F. Hardin, to recover the possession of a certain wagon. John G. McElroy owned the wagon, but Hardin held the same as constable by virtue of an execution issued against the property of McElroy, and Joice claimed to be entitled to the possession thereof by virtue of a paramount lien, claimed to have been created prior to the issue of said execution, by virtue of certain transactions had between himself and McElroy. The facts of the case are substantially as follows: Joice and McElroy each owned a sewing-machine wagon. McElroy borrowed Joice's wagon, and as a pledge and security for the safe return of the same, left with Joice his own wagon. McElroy never returned Joice's wagon. About this time the Remington Sewing Machine Company obtained a personal judgment against McElroy for $35; and on this judgment said execution was afterward issued and placed in the hands of Hardin, constable for service, who soon afterward levied the same upon McElroy's wagon and took it from the possession of Joice. Joice afterward commenced this action of replevin, to recover said wagon from Hardin. Afterward, McElroy "turned over" to the Remington Sewing Machine Company, Joice's wagon in payment or part payment of a debt due from McElroy to the company. The case was afterward tried before the court and jury, and all the foregoing facts were amply proved. Upon the questions whether Joice objected to Hardin's taking the wagon from him, whether he uttered any protest against the the same, or whether he did not voluntarily permit Hardin to levy upon the wagon and take it from his possession, and

whether he did not willingly let it go, we shall quote the evidence in full.

The following is all the evidence introduced upon this subject. Joice himself testified as follows:

At the time the defendant took the wagon in controversy, by virtue of the execution against McElroy, he (Joice) notified defendant Hardin that he held it as a pledge, and that plaintiff's wagon had never been returned by said McElroy, nor paid for. When the defendant was about to levy on the wagon, I told him just how I held it — that it was pledged to me by McElroy.

CROSS-EXAMINATION OF HENRY JOICE.— *Question:* Did you not state to defendant E. F. Hardin, before the defendant levied upon the wagon in controversy, and in the presence of W. F. Pugh and William Quigley, that the wagon in controversy was the *absolute* property of J. G. McElroy, and that *there was no claim upon or to it by any one,* and that the *title* to said wagon was in said McElroy, and *as clear as a whistle?*

*Answer:* I did so state to Mr. Hardin.

*Question:* Did you not *take* defendant Hardin *to where said wagon was,* and *point it out to him* as the property of said McElroy?

*Answer:* I did.

*Question:* Did not defendant Hardin, when he was about to make the levy on said wagon, tell you that if you had *any claim* to or about the wagon, to make said claim known then and there? and you then and there took out of said wagon a monkey-wrench which you stated belonged to H. S. Miller? and also that you claimed and took from said wagon then and there a contrivance used to fasten and secure sewing machines in the wagon when hauling them about?

*Answer:* Yes.

W. F. Pugh testified as follows:

On the day that defendant Hardin levied upon the wagon, Mr. Joice stated to E. F. Hardin, in the presence of Mr. Quigley and myself, that the wagon in controversy was the *absolute* property of J. G. McElroy; that *no one had a claim against it,* and that the *title* to said wagon was in J. G. McElroy, and *clear as a whistle.*

Hardin testified as follows:

Before and at the time I made said levy, Joice stated to me that the wagon in controversy was the *absolute* property of

J. G. McElroy. Joice *came to me* and told me this. He said the *title* to said wagon was in J. G. McElroy, and *there was no claim against it,* and that it was *as clear as a whistle.* Joice *took me* to the wagon and *pointed it out to me* as the property of J. G. McElroy. I then told him if there was anything about or to said wagon that did not belong to McElroy, but belonged to him, to take the same then and there and claim the same. This was at the time I made the levy. Joice took from said wagon a certain monkey-wrench which he stated belonged to H. T. Miller. He also took out of said wagon a contrivance used to fasten and secure sewing machines in the wagon when hauling them about. Joice never told me he had a special interest in said wagon, but told me he owned the wagon that McElroy took to Miami county. . . . Had not Joice made such statements to me, I would not have levied upon the wagon in controversy.

No other evidence was introduced upon this subject.

The jury found in favor of Joice, and against Hardin. The defendant Hardin then moved the court for a new trial, upon the grounds that the verdict was against the law and the evidence. The court overruled the motion, however, and rendered judgment in favor of the plaintiff, and against the defendant, in accordance with the verdict. The defendant now, as plaintiff in error, brings the case to this court, and assigns for error the overruling of said motion for a new trial. We think the court below erred; for, while the evidence showed that Joice stated to Hardin at the time the levy was made, that McElroy left his wagon with Joice as a pledge and a security for the safe return of Joice's wagon, yet Joice did not assert in Hardin's presence any claim to or lien upon the wagon. He did not object to Hardin's taking it from him; he uttered no protest. On the contrary, he voluntarily and willingly permitted Hardin to take it; indeed, he even encouraged Hardin to take it. Hardin was undoubtedly led to believe by Joice's words and actions that Joice had no intention of asserting any claim to or lien upon the property, but that whatever claim or lien Joice might have had or might have supposed he had with reference to said property, he was willing to waive it, and did waive it. Hardin acted

21—21 KAS.

upon these words and actions of Joice; and we think Hardin acted rightly, and therefore no cause of action accrued against him by reason of such acts. As to Hardin, Joice waived all interest which he might have had in said wagon.

With these views, it follows that there was no sufficient evidence to sustain the verdict of the jury, which found substantially that Joice at the time of the commencement of this suit had a special ownership or interest in said wagon, paramount to Hardin's right of possession, and that Hardin detained the property wrongfully from Joice; but on the contrary, the verdict of the jury was against the evidence in these respects. It follows that the court below erred in overruling said motion for a new trial, and therefore the judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.