N. HAZEL v. PATRICK LYDEN *et al.*

EXECUTION, *Void Sale Under — Estoppel to Deny Validity.* Where plaintiff's real property was sold under an execution from a court having no jurisdiction to issue the same, and by an officer having no authority to sell, but the purchaser at the sale acted in good faith, and paid the officer at the time of the sale all that it was reasonably worth, and the owner thereof, who was present at the sale, made no protest, but gave the purchaser quietly and without objection possession of the land, and received the proceeds thereof, and permitted the purchaser and his grantees for nearly 12 years to occupy the land and

make valuable improvements thereon, without objection, although living within two miles of the land, *held*, that such owner, under the circumstances, is estopped from denying the title of the purchaser at the sale and from recovering the land, although at the time of the sale such owner did not know that the sale and the proceedings were void.

*Error from Lincoln District Court.*

EJECTMENT. Judgment for plaintiffs, *Lyden* and another, at the October term, 1889. The defendant, *Hazel*, brings the case here. The facts are stated in the opinion.

*Garver & Bond,* and *Ira E. Lloyd,* for plaintiff in error:

Both Patrick Lyden and Daniel Lyden had full knowledge of all the facts, and accepted the proceeds arising from the sale of the land, and in every way, for over 12 years, recognized the rights of the purchaser at the sale, and those claiming under him, and stood by and allowed lasting and valuable improvements to be made upon the land, without raising any objection. This would estop and prevent them from claiming any title to the land. In the case of *Reibert v. Voss,* 2 S. E. Rep. 508, the court held that, where plaintiff's property was sold by an officer having no authority to sell same, the plaintiff having by his words and his conduct recognized the sale as valid, the purchaser obtained a good title and the plaintiff was estopped from questioning the sale. See, also, as recognizing the same principle: *Tousley v. Board of Education,* 40 N. W. Rep. 509; *Storrs v. Barker,* 6 Johns. Ch. 166, 10 Am. Dec. 310; *Brewer v. Nash,* 17 Atl. Rep. 857; 54 Am. Dec. 194; 58 id. 740; 80 id. 163; 42 id. 444; 19 Pa. St. 429; 25 id. 282; 24 Iowa, 118; 9 Kas. 344; 21 id. 318; 34 id. 542; 35 id. 66.

The court in its instructions to the jury lays down the rule that the Lydens must have known that the sale was "not made in conformity with law, and that they were not in law obliged to abide with or accept such sale," before they would be estopped. This instruction lays down the principle that ignorance of the law or of one's legal rights relieves one from

a liability on which he would otherwise be held.  As applied to the circumstances of this case, it allows the plaintiffs below to retain the full value of the land, (its purchase price of $610,) and also to recover the land.  We think the instruction wrong in principle, and against equity and right.  See note, 10 Am. Dec., commencing on page 323.  The instructions are all erroneous, as holding the same theory.

*C. B. Daughters,* and *D. Ritchie,* for defendants in error:

Counsel for plaintiff in error cite 10 Am. Dec. 310, (6 Johns. Ch. 166.)  In that case the court says that ignorance of law is no defense if defendant has done something.  Silence is not sufficient to estop him.  It is not claimed that Lyden was any more than silent at the time of the sale.

It is claimed that the taking of the surplus after the sale would estop the plaintiff.  Counsel cite 17 Atl. Rep. 857.  There the court says: "There can be no doubt that the parties receiving the money would be subject to such estoppel if when they received it they knew, not only that it was a part of the proceeds of the mortgage sale, but also the circumstances which invalidate, or are supposed to invalidate, that sale."  The jury, in their special findings, find that Lyden did not know the sale was void, and did not know his legal rights in relation to such sale until he learned something about it from Marshall, a short time before commencing this action.

The case in 19 Pa. St. 429, cited by counsel, bears out the theory that knowledge of the law as well as the facts is necessary to create an estoppel.

Counsel cite 25 Pa. St. 282.  This case is similar to the one at bar.  There the court certainly recognizes the doctrine that a party must know his legal rights before his acts can estop him.  In that case, there was no evidence rebutting the presumption of knowledge of the law; while, in the case at bar, the jury find from the evidence that Lyden did not know his legal rights in the matter.  Ratifying acts must be done with full knowledge of the facts constituting the transaction.

Freeman, Void Jud. Sales, § 50; Bigelow, Estop., 2d ed., pp. 476, 484, 499, 502, 541; 7 Ohio St. 99; 14 Kas. 190, 196; 18 id. 333; 8 id. 189; 2 Am. Rep. 570; 76 Ill. 18; 78 id. 492; 12 Pa. St. 283, 296; 13 N. W. Rep. 387; 37 Kas. 558; 8 id. 196; 14 id. 190.

It is contended that the purchase money should have been tendered back before commencing action. The contrary is held in 42 Am. Dec. 444, cited by counsel. But outside of all this, equitable estoppel can only be invoked where there is no other adequate remedy. In the case in 40 Wis. 66, in all points similar to the one at bar, the court held that there were no grounds for invoking equitable estoppel, as, in 24 Wis. 441, and 29 id. 169, it had been decided that the defendant could set up any equitable defense that he might have. Stat. of Wis. of 1878, § 3078.

The opinion of the court was delivered by

HORTON, C. J.: Ejectment brought by Patrick and Daniel Lyden against N. Hazel, to recover the possession of the west half of the northwest quarter and the west half of the southwest quarter of section 24, township 13, range 8, in Lincoln county, in this state. John Lyden, deceased, who died in February, 1875, was the owner in fee simple in his lifetime of the land described, the title of which is in dispute. At his death, being unmarried, he made, by his last will and testament, his sister, Mrs. Mary Cannon, formerly Mary Lyden, his sole heir. On March 29, 1875, Mrs. Cannon sold and conveyed the land to her brothers, Patrick and Daniel Lyden. In May, 1876, Ellen McInerey obtained judgment in the district court of Lincoln county against the estate of John Lyden, deceased, for $160, including costs. This judgment was filed as a claim against the estate of John Lyden, deceased, in the probate court of Lincoln county. On July 31, 1876, the probate court issued execution, directed to the sheriff of that county, to collect the judgment and costs out of the property or estate of John Lyden, deceased. The sheriff received the execution on July 31, 1876, and on August 5,

1876, the property was appraised at $640. On September 7, 1876, the land, after having been advertised, was sold by the sheriff to L. E. Farnsworth for $610. The sale was confirmed, and Farnsworth received a deed, which was recorded on December 11, 1876. On December 8, 1879, L. E. Farnsworth conveyed the land to A. E. Doolittle, and on July 17, 1882, Doolittle conveyed the land to N. Hazel, defendant below.

Assuming that the sale to Farnsworth, on September 7, 1876, was grossly irregular or void, the question for us to determine is, whether the Lydens were estopped, at the commencement of this action, from questioning the sale to or the title obtained by Farnsworth, under whom Hazel claims title. L. E. Farnsworth purchased the land in good faith, and paid the sheriff at the time of the sale all that it was reasonably worth. After Farnsworth purchased the land, Patrick Lyden quietly and without objection gave up to him possession of the same. At the time of the sale by the sheriff, Patrick Lyden was administrator of the estate of John Lyden, deceased, and was at all times the agent of his brother, Daniel Lyden. After the sale, Patrick Lyden received the proceeds thereof, applied a part to the payment of claims against the estate of John Lyden, deceased, including a claim which he had against the estate, and the surplus of such proceeds he retained for Daniel Lyden and himself, as assignees of Mrs. Cannon, the devisee of John Lyden, deceased. He knew when the land was levied upon under the execution by the sheriff, and was present at the sale, but made no protest. He, however, did not know that the sale was grossly irregular or void until a short time before this action was commenced. After the sale, Farnsworth and his subsequent grantees occupied and made valuable improvements upon the land, with the knowledge of Patrick Lyden and without any objection from him, although Lyden resided all the time within two miles of the premises. This action was brought on the 28th of August, 1888, nearly 12 years after the sale by the sheriff to Farnsworth.

The Lydens, having retained the proceeds of the sale, $610, the reasonable value of the land, still ask to recover the land.   There can be no doubt that the Lydens, after they received the proceeds of the sale of the land, would be estopped from denying the title of Hazel, acquired from Farnsworth, if when they received the money they knew, not only that it was a part of the proceeds of the sale, but also the circumstances which rendered the sale grossly irregular or void; but the jury found that the Lydens did not know that the sale of the land was void at the time it was made, and it is contended that such knowledge was necessary to create an estoppel.   And further, it is contended that the Lydens have not lost their right to deny title or claim possession by their conduct or *laches*.   But it seems to us that if the Lydens received the proceeds of the sale, or a part thereof, even without knowledge that the sale was void, and continue to keep the money after acquiring it, an estoppel will likewise continue.   They ought not to be permitted to repudiate the sale made by the sheriff and at the same time insist upon having the benefit of the proceeds, or a part thereof. (*Brewer v. Nash*, 17 Atl. Rep. [S. C. R. I.] 857; *Maple v. Kusart*, 53 Pa. St. 348.)   But further than this, the general rule is that "ignorance of the law, with a full knowledge of the facts, cannot generally be set up as a defense; nor will it protect a party from the operation of the rule in equity, when the circumstances would otherwise create an equitable bar to the legal title." (*Storrs v. Barker*, 10 Am. Dec. 316.)   The doctrine of this case was afterward considered in *Tilton v. Nelson*, 27 Barb. 595, and, in the opinion by Emott, J., he says: "The question is presented whether ignorance of the law will prevent the application of the rule of equitable estoppel;" and referring to the decision in the principal case, he says that, when a party thus asserts his ignorance of his title to avoid an estoppel, he encounters two principles of law of general application.   "The first of these principles is, that when a party procures or even acquiesces in the disposition of his property by another, under color of title, and pretending to

title, he shall be bound by such disposition, and shall be presumed to know the law so far as it is applicable to the case. The other is, that even if he shows that he was really ignorant of the law, and acted in ignorance, still the maxim *ignorantia legis neminem excusat* will apply in favor of the other party." (10 Am. Dec., 325, 326, notes.)

In *Smith v. Cramer*, 39 Iowa, 413, one who pleaded a judgment, in honest ignorance that it was void, was nevertheless held to be estopped from availing himself of a mistake of his legal rights. A strong case, holding the same doctrine, is *Maple v. Kusart*, 53 Pa. St. 348. There it appeared a husband and wife were seized of an estate by entireties. The husband in his will directed the land to be sold, and the proceeds to be divided among his wife and children. Having named no one to make the sale, the land was sold under an order of the orphans' court, and bought by two of the children, at the request of the widow, who received her share of the proceeds, in accordance with the will. After her death, in ejectment for the land by some of the heirs, it was held that they were estopped by her acts, and that the estoppel would operate notwithstanding she was ignorant of her legal rights. A somewhat similar decision was made in a more recent case, *Cox v. Rogers*, 77 Pa. St. 160.

In *Reichert v. Voss*, 2 S. E. Rep. (S. C. Ga.) 558, the chief justice, speaking for the court, said:

"The sale, too, occurred at a wrong time and place, and, as a constable's sale proper, counts for nothing. But we hold with the court below, that after the active part taken by Mr. Reichert in promoting the rendition of these judgments, and the making of a sale under them, he is estopped from pursuing the property in the hands of a purchaser who has bought honestly, and parted with his money. If the notary and the constable had not been officers at all, but only private persons, and if Reichert had authorized one to give judgment and the other to enforce it against his property, (he accepting property for storage after seizure and aiding to promote its removal to the place of sale,) he would have been bound by the transaction."

In *Smith v. Warden,* 19 Pa. St. 424, it was decided that

"Equitable estoppels have place as well where the proceeds received arise from a sale by authority of law as where they spring from the act of the party, and the application of the principle does not depend on any supposed distinction between a void and a voidable sale."

In *Mitchell v. Freedly,* 10 Pa. St. 208, it was held that, where a sheriff's sale was confirmed without objection, the application of the proceeds to the debts of the defendant in the execution "is the same thing as if paid to himself." It is fully settled, upon principle and authority, that where a sale is made for the benefit of anyone, the receipt of the proceeds by such person validates it. In such a case, the supposed distinction between a void and a voidable sale is immaterial." (7 Watts & S. 111; 5 Pa. St. 176; 8 Watts, 280; *Spragg v. Shriver,* 25 Pa. St. 282.)

In *Gray v. Crockett,* 35 Kas. 66, this court decided that "If one stands by and allows another to purchase his property without giving him any notice of his title, a court of equity will treat it as fraudulent for the owner to afterward try to assert his title." See, also, *Hardin v. Joice,* 21 Kas. 318; *Kothman v. Markson,* 34 id. 542.

It is urged upon the part of the Lydens, that the west half of the southwest quarter was never levied upon, never appraised, never advertised, and never sold. It is admitted, however, that this 80 acres of land was included in the sheriff's deed, recorded December 11, 1876, and considering all the testimony in the record, it is clearly shown that this 80 acres was paid for by Farnsworth and taken possession of by him under the sale. Therefore, both 80 acres must be treated as similarly situated, and controlled by the doctrine of estoppel. It is possible that there is a clerical error in the execution and return embraced in the record; but whether there is or not, there is sufficient other testimony tending to show that if an equitable estoppel applies to one 80 acres of land it does to the other 80.

The judgment of the district court will be reversed, and the cause remanded, with direction to the court below to enter judgment upon the special findings of fact for the defendant below, and against the plaintiffs below.

All the Justices concurring.