MARY GRAHAM, Respondent, v. MARY WILSON et al., Appellants.

Kansas City Court of Appeals, December 31, 1912.

1. **EQUITY: Trust Funds: Husband ' and Wife: Incumbrances.** This is an action in equity brought by the plaintiff to establish a resulting trust in land belonging to her husband at the time of his death. The plaintiff, at the time of her marriage, was a widow with three children, the husband was a widower with four children. The husband took $500 of plaintiff's money to pay for a new house, and $400 to pay off the incumbrances on the farm. The trial court found each of these advancements created a trust by operation of law. It is *held* that the court erred in declaring a trust for the $500 used to pay for the house, but a trust was properly declared for the $400 with which the husband paid off the incumbrances on the land.

2. **WITNESSES: Evidence: Contracts.** In actions where one of the original parties is dead, the other party to such a contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party claiming under him. Sec. 6354, R. S. 1909.

3. **EQUITY: Trust Fund: Resulting Trust.** When the husband without the consent of his wife in writing appropriates her separate estate and uses it for the betterment of his own land, he commits a wrong against his wife, for which the law affords her redress and treats him as a trustee *ex maleficio*. She can follow that money and have it charged, in equity, as a lien upon the land. Thus she becomes the beneficiary of an implied or resulting trust by operation of law, and not by contract.

4. **STATUTE OF LIMITATIONS: Married Woman.** Under Sec. 1879, R. S. 1909, the twenty-four year Statute of Limitations begins to run as soon as the cause of action becomes complete whether the party is covert or discovert.

Graham v. Wilson.

5. ————: Trusts: Expressed and Resulting. As to an expressed trust the Statute of Limitations does not begin to run until the trust is denied, but as to trusts arising by operation of law the statute begins to run from the date of the discovery by the *cestui que trust* of the facts constituting the trust.

Appeal from Buchanan Circuit Court.—*Hon. W. K. Amick,* Judge.

REVERSED AND REMANDED (*with directions*).

*John A. Connett* for appellants.

*Sterling P. Reynolds* for respondent.

JOHNSON, J.—This is an action in equity begun July 7, 1909, by plaintiff, the widow of John G. Graham, deceased, to enforce a lien against certain lands in Buchanan county belonging to her husband at the time of his death which occurred July 1, 1909. Two of the defendants, Florence Parrott and Rhody Graham, were children of plaintiff and her deceased husband, and four of the defendants, viz.: Mary Wilson (intermarried with defendant Bennett Wilson) John Graham, Lucien Graham and William Graham, were children of John G. Graham by a former wife. The children of plaintiff are not contesting the action and the controversy we are called upon to settle is between plaintiff and her stepchildren.

Plaintiff and Graham were married in March, 1882, and immediately made their home on a farm of eighty acres owned by the husband in Buchanan county. He was a widower with four children and plaintiff was a widow with three children. All of the children were minors and were reared as one family on the little farm. Graham had been living there with his children and had been having a bitter struggle with poverty. The improvements on the place were poor, especially the dwelling house and the farm was incumbered by two liens securing debts owned by Gra-

ham aggregating $400.  Plaintiff at the time of her marriage had money and notes of the value of about $2000 which were her separate estate and the charge in the petition is that her husband at divers times obtained possession of her money without her consent in writing and used it in discharging the two liens just mentioned and in building a new house and making other improvements on the farm.  The prayer of the petition is ''that an accounting be taken of the money and property received by said John G. Graham belonging to plaintiff and judgment rendered for plaintiff for the amount due her, and that the same be declared a lien upon the above described real estate,'' etc.

The answer contains a general denial and a plea that the action is barred by the Statute of Limitations and in a cross-bill defendants seek to have plaintiff's dower and homestead in the land set off as provided by statute.

After hearing the evidence offered by the respective parties the court granted the prayer of the petition, adjudged that the deceased husband of plaintiff had procured from her, without her consent in writing, the sum of $900 which he had used in paying off the incumbrances and in the improvement of the farm and decreed a foreclosure of the lien he adjudged had inured to plaintiff.  He refused to grant the relief prayed by defendants in their cross-petition.  Defendants appealed.

In the findings of fact made by the court it was found that in 1883 and 1884 Graham procured $500 from plaintiff to pay the cost of a new house he built on the farm, that in 1886 he obtained $200 which he used in paying off one of the incumbrances and in 1889 he obtained $200 more and with it paid off the other incumbrance.  These amounts make up the sum for which the court decreed plaintiff was entitled to a lien.  The first point argued by defendants is that

plaintiff was not a competent witness and that the court erred in allowing her to give testimony over the objection of defendants. Counsel rest this point solely on the provision of section 6354, Revised Statutes 1909, "that in actions where one of the original parties to the contract is dead . . . the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party claiming under him."

The cause of action asserted by plaintiff does not arise from any contract or contractual relation between her and her husband. If without her consent in writing he appropriated her separate estate and used it in the betterment of his own land, he committed a wrong against his wife for which the law afforded her redress and, treating him as a trustee *ex maleficio,* she could follow her money and have it charged in equity as a lien upon the land. The wrongful act or acts of her husband put her in the position of the beneficiary of an implied or resulting trust created by operation of law and not by contract.

Not being a party to a contract with a deceased person the statute just quoted did not disqualify her as a witness unless it should be found that she is a party to "the cause of action" within the meaning of that term as used in the statute.

In support of his contention that plaintiff was such party and, therefore, incompetent as a witness, counsel for defendants cite us to the following cases: Lins v. Lenhardt, 127 Mo. l. c. 289-290; Curd v. Brown, 148 Mo. l. c. 95; Miller v. Slupsky, 158 Mo. 643.

In the first of these cases the point of the incompetency of the witness was not raised in the briefs but the court mentioned it "lest it be thought that, in passing over it in silence, we have given our sanction to such evidence as admissible," and held the witness incompetent on the ground that "the transactions between her husband and herself amounted to 'the con-

tract or cause of action in issue and on trial' in this
case, and he being dead, and she being 'the other
party' to that 'contract or cause of action' was in-
competent to 'testify in her own favor' as to transac-
tions between them.''

In the case of Curd v. Brown, a husband sued the
heirs of his deceased wife to impress certain real es-
tate with a trust, on the ground that it had been paid
for almost entirely by his money but deeded to his
deceased wife.  Held, he was incompetent as a witness
for any purpose ''because the other party to the con-
tract was dead.''  We do not regard this decision as
pertinent to the questions under consideration for the
reason that the trust, if any, created in favor of the
husband, was founded on contract—on the implied
promise of the wife to hold the title for her husband's
benefit, while in the present case, as we have said, the
cause of action did not inure to plaintiff in virtue of
any implied promise of her husband but by operation
of law, since he had appropriated her separate estate
in a manner violative of the laws for the protection
of married women.

The remaining case cited by defendants (Miller
v. Slupsky, supra) clearly is in point.  The heirs of a
deceased married woman sued her surviving husband
to divest him of title to real estate on the ground that
her separate means were used by the husband in the
payment of the purchase price of the land.  The de-
fendant husband was allowed to testify that he used
his own money in paying for the property and the
court held this ruling to be erroneous.  We quote from
the opinion (l. c. 646):

''The plaintiffs' cause of action is derivative.
They, as heirs, were asserting a cause of action which
Sophia Slupsky is alleged to have had against Abra-
ham Slupsky in her lifetime, she being the one party
to that cause of action and he the other, and she be-
ing dead he was incompetent to testify in the action.

[R. S. 1889, section 8918; Lins v. Lenhardt, 127 Mo. 271; Messimer v. McCray, 113 Mo. 382; Meier v. Thieman, 90 Mo. 433.] As was said in the last case cited: 'The language of the statute is 'the other party,' i. e., the other original party to the contract or cause of action, shall not be admitted to testify in his own favor, when death has precluded the other *original party* from an equal opportunity. Whether party to the record or not, makes no difference as to the statutory incompetency of the witness; he is prohibited from testifying in his own favor in any case whatsoever when the other original party to the contract or cause of action in issue and on trial is dead.' '

In that case, as in the one before us, the cause of action was not founded on contract, and in holding that the surviving spouse was not a competent witness, the Supreme Court must have entertained the view that the term "cause of action" as employed in the statute is not restricted to a cause arising on contract but to any cause of whatsoever origin the surviving spouse may have against the estate of his or her deceased wife or husband.

On the other hand we are cited by counsel for plaintiff to the following cases: Freeland v. Williamson, 220 Mo. 217; McKee v. Downing, 224 Mo. 115. In the Freeland case the father of a married woman sent money to a third person to buy a farm for her. By mistake the agent had the title conveyed to her husband of which fact she remained ignorant until after her husband's death. She brought suit in equity to recover the land on the theory that a resulting trust had been created in her favor. She was allowed to testify and the Supreme Court approved the ruling of the trial court, saying, in part: "She did not testify as to any contract with her husband. Her right to the land was not derived through any contract between her and her husband, but depended upon the payment of the money for the land in question by her father for

her benefit, under an agreement between her father, Andrew Miller, and John Spencer, to which arrangement her husband was not a party. We think she was clearly a competent witness in her own behalf.''

In that case the resulting trust did not spring from the act of the husband in appropriating his wife's separate estate without her written consent but from the fact that he received and held title to land intended by her father as a gift to her. She was the beneficiary of a trust created through the improper performance by the agent of a contract her father had made for her benefit. But in accepting a title to a gift he knew was intended for his wife and in concealing the mistake from her, the husband, in effect, appropriated her separate estate in violation of her statutory rights and a cause of action against him inured to her at the moment of his misappropriation. Had he been alive when she discovered the mistake she could have maintained an action for the recovery of the land and such cause would have been founded, not on contract with her husband express or implied, but upon his wrong in appropriating her separate property to his own use. In equity the gift from her father became a part of her separate estate on the conveyance of the land by his vendor and the mistake in the conveyance was without effect on her equitable title. The cause of action, therefore, was the same in character as the one in hand and the decision holding, in effect that the wife is a competent witness in a cause not founded on a contract with her husband is not in harmony with the case of Miller v. Slupsky, supra.

In McKee v. Downing, the heirs of a deceased married woman sued her surviving husband to recover land bought with her money but conveyed to the husband. One of the questions, i. e., the competency of plaintiffs as witnesses, is fully discussed in the opinion and in the course of the discussion the precise

Graham v. Wilson.

question before us is touched upon in a manner expressive of approval of the rule applied in the Freeland case. An effort is made to reconcile this rule with that announced in the Slupsky case. Speaking for myself alone I do not think the distinction drawn between the two decisions affords any logical ground on which they may be harmonized. It is a distinction without a difference, but, however that may be, the important fact is that the Supreme Court unequivocally reaffirmed the doctrine of the Freeland case, holding, in effect, that in a cause of action such as the present which arises not from any contract, express or implied, between husband and wife, the wife, despoiled of her separate property by her husband, may give testimony in an action for the recovery of her property whether her husband be living or dead.

It is said in the opinion "the act of defendant, in using her individual property to buy land and in taking the title in his own name, was a fraud and the purpose of this suit is to make him restore what he had fraudulently deprived her of. No contract is in issue in this case." And on the theory that the cause is one sounding in tort the court reaches the conclusion that it does not fall within the operation of the statutory term "the other party to such contract or cause of action," as that term is intended to be understood. No error was committed in allowing plaintiff to testify, and with her testimony we think her evidence satisfies the rule invoked by defendants that in actions to establish and enforce a trust arising by operation of law, i. e., an implied or resulting trust, the court would not be justified in declaring the trust upon doubtful evidence or upon a mere preponderance of evidence but must have as a foundation for such declaration, evidence so clear, cogent and convincing that it leaves no room for a reasonable doubt of the existence of facts, which, of themselves, would imply a

trust by operation of law. [Johnson v. Quarles, 46 Mo. 423; Curd v. Brown, supra; Burdett v. May, 100 Mo. l. c. 16; Bunel v. Nester, 203 Mo. 429; McKee v. Downing, supra.]

We think the evidence as a whole is convincing that the money with which the husband of plaintiff built the new house and discharged the incumbrances on his farm was procured by him from plaintiff without her written consent and from those facts we conclude, as did the learned chancellor, that each of these advancements created a trust by operation of law of which plaintiff was the *cestui que trust* and her husband the trustee and that since the proceeds of the trust were used in the betterment of the husband's title and estate in the land, they became a charge or lien against the land which plaintiff had a right to have enforced in an equitable action instituted for that purpose within the time prescribed by law. This brings us to the consideration of the defense that the action is barred by the Statute of Limitations.

Plaintiff was under coverture until July 1, 1909, and during that period her cause of action remained unaffected by the provisions of section 1879, Revised Statutes 1909. As soon as her cause of action arose she had the right to sue her husband even during coverture but she was not compelled to sue in order to avoid the bar of the statute (section 1879) until after she became discovert. But under the proviso to section 1881 the twenty-four year statute began to run against her as soon as her cause of action became complete, and whether covert or discovert, that statute would bar her action if it were not brought within the period of twenty-four years.

As to an express trust the Statute of Limitations does not begin to run until the trust is denied but as to trusts arising by operation of law the statute be-

gins to run from the date of the discovery by the *cestui que trust* of the facts constituting the trust. [Burdett v. May, supra, 1. c. 18; Reed v. Painter, 145 Mo. 341; McKee v. Downing, supra.] In the present case the facts constituting the resulting trust were known to plaintiff as soon as they occurred and the twenty-four year statute began running as to each of the advancements in question from the dates of their procurement by her husband. The money to build the house was obtained in 1883 and 1884, more than twenty-four years before the bringing of this action which immediately followed the discoverture of plaintiff. The action so far as it relates to the enforcement of the trust created by that advancement was barred by limitation. The advancements to pay off the incumbrances on the farm made in 1886 and 1889 being within the twenty-four year period were not barred nor was plaintiff guilty of laches in not bringing suit while covert and during the currency of that period. Being a married woman she had a right to give considerations of marital peace and concord precedence over property rights. "Mere ability to sue does not impose an obligation to do so." [Lindell v. Lindell, 142 Mo. 1. c. 76.]` And but for the restriction on the exercise of her rights imposed by the twenty-four year statute she would not have been compelled to sue until she became discovert no matter how great the lapse of time from the date of the origin of her cause of action.

Our conclusion is that the learned trial judge erred in declaring and enforcing a trust constituted by the advancement to build the house, and that he properly declared a trust on account of the advancements to discharge the incumbrances.

The point of defendants relating to the ruling on the cross-bill is not well taken. The cause asserted thereon was neither defensive nor in any other way

germane to the cause pleaded in the petition. The judgment is reversed and the cause remanded with directions to enter judgment in accordance with the views expressed.

All concur.