DOLLIE M. CARR et al., Appellants, v. IRENE
BALLIET BARR et al.

Division Two, June 19, 1922.

1. **TRUST ESTATE:** Ignoring Will: Devise to Pay Debt: Breach of
Trust. To disregard the provisions of a will, directing the executors to sell a certain farm to pay an incumbrance on it and two others, is a breach of trust.
294 Mo.—43

2. ———: **Executor as Trustee: Acceptance.** The effect of a provision in a will expressly ordering that a certain farm be sold to pay an incumbrance on said farm and testatrix's other farms was to convert said farm into money, which became a trust fund in the hands of the trustees charged with the trust of discharging the incumbrance. And where said will bound "my executor and executrix hereinafter mentioned to carry out this part of my last will" and then named her husband as executor and a daughter as an executrix, who did not qualify, because married and therefore disqualified by the then statute, but did not decline to accept the trust, but took into her home the minor devisee of another farm incumbered with the same deed of trust and assumed the responsibility of caring for her, and, the executor becoming insane, did all the business relating to the estate, her acceptance of the trust, in the absence of any disclaimer, will be presumed.

3. ———: **Trustee De Son Tort.** A devisee in a will, by which one farm was set apart to pay a deed of trust incumbering it and two others, who intermeddles with such trust property, by acting in collusion with the *cestui que trust* in the deed of trust and inducing the trustee therein to sell two of them in order that she might acquire the title to both, and have the other devised to her free of such incumbrance, and thereby to defeat the trust, is liable as a trustee *de son tort*.

4. ———: **Violation of Trust: Use of Fund for Personal Benefit.** A court of equity will not permit a trustee to violate his trust and use the trust fund for his personal benefit. The power being bestowed by will upon a certain person to use a designated fund for a designated purpose, and the acceptance of that power having been established by the conduct of said person, and a fiduciary relation between said trustee and the beneficiary having likewise been established, equity will not permit the trustee, under the gloss of necessity and by collusion with others, to use the fund for his own financial betterment.

5. ———: ———: ———: **Disregard of Will: Purchasing Property at Mortgage Sale.** The owner of three farms, all incumbered by a single deed of trust, by her last will devised one of them to her daughter for life with remainder in her husband, and another to her husband for life and at his death to his unmarried sister for life and at her death one undivided half to the heirs of said sister and the other half to a minor foster daughter "in trust in the hands of my executor and executrix for her benefit until she is twenty-one years of age," and expressly willed and ordered that the third farm should be sold to pay the incumbrance and bound the executor and executrix to carry out this provision, and named ·

Carr v. Barr.

her husband as executor and her said daughter as executrix. The daughter, being married, could not qualify under the then statute, but, the husband having qualified and becoming insane, she took him, his sister and the minor foster daughter into the home which she maintained on testator's home place, and assumed the responsibility of caring for them, and, being a woman of affairs and business qualities, assumed the entire managment of the estate and of the three farms. Acting in collusion with the holder of the mortgage note and under the pretext of having no money to pay its accumulating interest, she induced the trustee in tne deed of trust to sell, at public auction, without competitive bidding, the farm set apart by the will to pay the incumbrance and the one in which the foster daughter and the heirs of her sister had been given estates in remainder, for exactly the amount of the debt, and becoming the purchaser she thereby acquired, not only the farm thus set aside, which alone was worth much more than the incumbrance, but the estates for life and in remainder devised to her father's sister and her minor foster sister, and also freed from the incumbrance the farm devised to her and her husband. *Held*, *first*, that said daughter, by her conduct, accepted the trusteeship under the will, although she did not qualify as executrix; *second*, although her husband was appointed guardian and curator for the minor foster daughter he was only nominally such, and morally said trustee held that fiduciary relation; *third*, the effect of the provision of the will was to convert into money the farm set apart to pay the incumbrance; *fourth*, the will requiring the trustee to sell the farm to pay the incumbrance, equity will regard that as done which ought to have been done, and will hold her as having sold the farm under the power of sale vested in her by the will, and as having the purchase money in her hands as a trust fund for executing the trust; and, *fifth*, the farm set apart by the will to pay the incumbrance being at the time worth far more than the amount of the debt, the deed of trust was satisfied by the foreclosure sale, and she took the title to the farm devised to her foster sister and the heirs of her father's sister, in trust for said remaindermen, and her title thereby acquired to said farm is divested out of her and vested in them.

6. ————: Limitations: Life Estate. Remaindermen are not entitled to the possession of land burdened with two successive life estates until the termination of both of them, and where their remainder has been wrongfully sold and acquired by their trustee no question of adverse possession or limitations as to them can arise until the death of the second life tenant.

Appeal from Shelby Circuit Court.—*Hon. V. L. Drain,*

Judge.

REVERSED.

*R. G. Maupin* and *Harry J. Libby* for appellants.

(1) The ninth clause of the will being imperative, and the duty to sell mandatory, this clause created not a mere power, but an express trust to sell the land, and amounted to an equitable conversion of the "Moss Farm" from land into money, as of the date of death of the testatrix, and the farm became thereby trust property and a trust fund specifically charged with the trust of discharging the trust deed indebtedness and extinguishing the lien on the remaining tracts. 3 Pomeroy's Eq. Juris. (3 Ed.) secs. 991 to 993; 2 Perry on Trusts (6 Ed.) secs. 557-562; Compton v. McMahan, 19 Mo. App. 494; Nall v. Nall, 243 Mo. 247; Griffeth v. Witten, 252 Mo. 627; De Lashmutt v. Teetor, 261 Mo. 412; Gilbreath, v. Cosgrove, 193 Mo. App. 419. (2) Non-exercise of the trust by Minnie A. D. Dunning Balliett, one of the named donees of the powers, or her attempted subversion of it by committing execution to the remaining two donees, one of whom was an unfortunate old insane man, whom she knew could never exercise it, cannot impair the rights of plaintiffs. Lechmers v. Earl of Carlyle, 3 P. Wms. 215; 1 Leading Cases in Eq. p. 611. (3) The failure of the trustees to execute the trust did not extinguish it. Property once charged with a valid trust will be followed in equity into whosesoever hands it comes, and he will be charged with the execution of the trust, save only when he be a purchaser for value and without notice. 1 Perry on Trusts (6 Ed.) sec. 38; 3 Pomeroy's Eq. Juris. (3 Ed,) sec. 1048; Edwards v. Welton, 25 Mo. 379; Coffee v. Couch, 28 Mo. 106; Paul v. Fulton, 25 Mo. 156; Darling v. Potts, 118 Mo. 506; Witte v. Storm, 236 Mo. 492; Elliott v. Machine Co., 236 Mo. 563. (4) Minnie A. D. Dunning Balliett, being both a devisee and trustee under the will, and the will having been admitted to probate in Shelby County, where the land is situated, took title with both actual and con-

structive notice of the trust with which the "Moss
Farm" was charged. And her devisee and grantee (Irene
Balliett Barr) took no higher title than did said Minnie
A. D. Dunning Balliett, and they, like she, hold the title
subject to the trust and subject to its execution and en-
forcement.    Davis v. Cummings, 195 S. .W. 755; Case
v. Goodman, 250 Mo. 115;  McDonald v. Quick, 139 Mo.
498; Patterson v. Booth, 103 Mo. 402; Tidings v. Pitcher,
82 Mo. 379;  Orrick v. Durham, 79 Mo. 174.   (5) Charges
for the payment of debts and legacies will follow the land
even in the hands of a bona-fide purchaser for value,
without actual notice, for the purchaser is affected in
such cases with constructive notice of the charge.    2
Alexander Com. on Wills, p. 1163, sec. 803; Harris v.
Fly, 7 Paige Ch. (N. Y.) 421; Wallington v. Taylor,
1 N. J. Eq. (Saxt.) 314.   (6) Equity will not compel a
trustee to take upon himself the burdens of a trust, yet
where the trust has been declared or established or where
the trustee has accepted the trust, equity, so long as it is
possible to do so, will not permit the trustee to defeat the
trust by his wrongful act or by his failure or refusal to
act, but will afford relief by compelling a faithful
execution of the trust for the preservation and enforce-
ment of rights dependent upon and derivable from it.
Duncan v. Simmons, 2 Stew. & P. 356; Cross v. Petree,
10 B. Monroe, 413; Switzer v. Skies, 3 Gill, 529; Cooper
v. McClun, 16 Ill. 435; Gunther v. Janes, 9 Cal. 643; O'Fal-
lon v. Clopton, 89 Mo. 284.   (7) Plaintiffs have a right to
compel an execution of the trust, and an application of
the value of the "Moss Farm," as of August 30, 1886, the
date of its wrongful acquisition by Minnie A. D. Dunning
Balliett, to the discharge of the trust deeds, 2 Perry on
Trusts (6 Ed.) sec. 560. (8) No formal acceptance of the
trust to sell the "Moss Farm," and to preserve the prop-
erty of the minor until she attained twenty-one years of
age was required of Mrs. Balliett. No ceremony of taking
oath or giving bond was requisite to her execution of
those trusts.   In this State it is held that after the elapse
of years and in the absence of a disclaimer the acceptance

of the trust may be presumed, even when no act has been done by the trustee to indicate an acceptance. Roberts v. Mosely, 64 Mo. 507; Bandon v. Carter, 119 Mo. 582; Jamison v. Zausch, 227 Mo. 415. Had Mrs. Balliett acted unequivocally in her dealings with these trusts she would have disavowed and renounced them. That course was open to her, and easy of accomplishment. She could have resigned in writing, or she could have filed a written disclaimer. This would have made her position clear, her course certain, her intention plain. But she did not do this. She chose to lay by, not acting herself, yet not disclaiming or resigning. She placed herself in a most equivocal position, and by not herself acting, and by not disclaiming or resigning, she committed execution of the trust to the remaining two, one of whom, her father, she knew to be an insane man, who could never execute it, thus leaving but the old sister-in-law remaining, who not herself constituting a majority, manifestly could not act. By not acting, she assured non-execution of the trusts paving the way for her own scheme to acquire the property to bud, blossom and bear fruit in due season. Nor did her equivocation stop here. Throughout, in her promises, representations, and assurances to the minor, upon acquisition of the title at the trustee sale, she maintained this same attitude. Before trustees can free themselves of a trust and claim adversely, they must act with the utmost frankness and candor. They must by open and unequivocal act deny the trust. This she never did. Butler v. Lawson, 72 Mo. 249; McGuire v. Nugent, 103 Mo. 161; Stanley's Estate v. Pence, 66 N. E. 51; Thomas v. Merry, 113 Ind. 83; St. Louis Trust Co. v. Harborough, 205 S. W. (Tex.) 496. (9) Minnie A. D. Dunning Balliett, although a married woman, and although disqualified from acting as executrix, was notwithstanding, competent and qualified to act as trustee of the trusts created by the will. 1 Perry on Trusts (6 Ed.) secs. 48-51; Springer v. Berry, 47 Me. 330; Jones v. Roberts, 61 N. H. 216; Sawyers Appeal, 16 N. H. 459; Lake v. Lambert, 4 Ves. Jr. 592; Fullam v. Rose, 160 Pa. St. 47;

Schluter v. Box. Svgs Bank, 117 N. Y. 125; Young v. Shelton, 139 Ala. 144; Osgood v. Bliss, 141 Mass. 474. (10) Being then trustee of an express trust to sell the Moss Farm and remove the incumbrance, and furthermore trustee of an express trust to hold, manage and preserve the estate of Dollie M. Dunning until she attained twenty-one years of age, and having power to sell the Moss Farm and remove the incumbrance under the power of sale conferred by will, the act of Minnie A. D. Dunning Balliett in intruding herself into, intermeddling with and bringing about the foreclosure of the Reid trust deed for the purpose of acquiring title to the trust property and to plaintiff's property, and her act in bidding in both the Moss and River farms, each at an unconscionable sacrifice, was clearly fraudulent. Stitt *. Stitt, 205 Mo. 155; Goellner v. Goellner, 178 S. W. 229. (11) The rule is fundamental that a trustee cannot acquire an interest in trust property adverse to the trust. When he does purchase in his own name an outstanding title, incumbrance or claim, or any interest in the trust property, the purchase will be held to inure to the benefit of the *cestui que trust*. A trustee is forbidden to acquire title under an outstanding incumbrance, even though such purchase is at a judicial sale and under a title superior to that conveyed to him as trustee. In such cases his purchase is treated as a payment or an assignment of the mortgage only, and the trustee will be allowed just what he paid out. Roberts v. Mosely, 64 Mo. 507; Baker v. Railroad, 86 Mo. 75; Jamison v. Glasscock, 29 Mo. 191; Turner v. Butler, 126 Mo. 131; McAllen v. Woodcock, 60 Mo. 174; Ownby v. Ely, 58 Mo. 475; Massey v. Young, 73 Mo. 260; Howard v. Brown, 197 Mo. 36; Condit v. Maxwell, 142 Mo. 266; Witte v. Storm, 236 Mo. 470; Cushman v. Bonfield, 139 Ill. 219; Rankin v. Bancroft, 114 Ill. 441; Taylor v. Calvert, 138 Ind. 67; Lenox v. Notrebe, Fed. Case, No. 8246b (Hamp.) 225; Cavogora v. Dan, 63 Cal. 227; Renew v. Butler, 30 Ga. 954; Houston v. Crutchfield, 22 Ala. 76; Darling v. Potts, 118 Mo. 506; Van Epps v. Van Epps, 9 Paige, 237; Bank v. Terry, 7 Hill, 260; Slade

v. Van Vechten, 11 Paige, 21; Keaton v. Cobb, 16 N. C. 439; Gilman v. Healy, 49 Hun, 274. (12) The holder of the legal title to lands will, in equity, be charged as a trustee, where it was acquired by fraud or under such circumstances as to render it inequitable for him to retain it. Stephenson v. Smith, 7 Mo. 610; Northcutt v. Martin, 28 Mo. 469; Grumley v. Webb, 44 Mo. 444; Damschroeder v. Thias, 51 Mo. 100; Phillips v. Hardenberg, 181 Mo. 463; Phillips v. Jackson, 240 Mo. 310; Canada v. Daniels, 175 Mo. App. 55. (13) Where the facts show that plaintiff's property was sold under execution or under foreclosure of a trust deed, and purchased by defendant at a price below its real value; that competitive bidding was prevented because plaintiff relied on defendant's agreement to hold the property for and re-convey to him, and that defendant did not carry out his promise, the property will be impressed in defendant's hands, and those of his grantees with notice, with a constructive trust in favor of the plaintiff. Phillips v. Jackson, 240 Mo. 335; O'Day v. Realty Co., 191 S. W. 41; Bunel v. Nester, 203 Mo. 429; Harrison v. Gravens, 188 Mo. 610; Phillips v. Hardenburg, 181 Mo. 474; Richardson v. Simpson, 143 Mo. 538; Leahy v. Witte, 123 Mo. 212; O'Fallon v. Clopton, 89 Mo. 284; Shaw v. Shaw, 86 Mo. 594; Damschroeder v. Thias, 51 Mo. 103; Peacock v. Nelson, 50 Mo. 256; Grumley v. Webb, 44 Mo. 452; Stewart v. Severance, 43 Mo. 322; McNew v. Booth, 42 Mo. 189; Cason v. Cason, 28 Mo. 47; Rose v. Bates, 12 Mo. 30. (4) Plaintiffs are not barred by the statutes of limitations as respondents contend, and as the circuit court held, for several very obvious reasons. (a) It is well settled that an heir or devisee cannot set up the statutes of limitation against the estate of the ancestor. Ames v. Beckley, 48 Vt. 395; Blair v. Hazzard, 158 Cal. 721; McSween v. McCown, 23 S. C. 342; Bowen v. Clymer, 79 Fed. 53; Kennedy's Admr. v. Linn Orphan Asylum, 31 Ky. 706; Jones v. Shoemaker, 41 Fla. 232; In Re Defoe, 2 Ont. 623; Rhett v. Jenkins, 25 S. C. 453; Whitter v. Floyd, 24 S. C. 413; Roberts v. Smith, 21 S. C. 455; Mc-

Cracken v. McCracken, 67 Mo. 590; Rogers v. Johnson, 125 Mo. 213; Sherwood v. Baker, 105 Mo. 477.    (b)  As between trustee and *cestui* of a technical trust the statute never runs, and time is no bar thereto.   2 Perry on Trusts  (6 Ed.) sec. 863, p. 1408; Beacher v. Foster, 51 W. Va. 605; Duckett v. Bank, 86 Md. 400.   (c)  To acquire title by limitation the character of the possession must be actual, open, exclusive, hostile, continuous and adverse from end to end in all parts.   Her naked possession, particularly during the continuation of the two life estates, which lasted until December 24, 1917, which she declared was all that she by such deed was holding, was not inconsistent with her declarations and promises, and was not adverse and hostile to plaintiff's owning the fee, whose estate she did not claim to have acquired, and which estate she promised and agreed to re-convey to the remaindermen.   McCune v. Goodwillie, 204 Mo. 306, 339; Houghton v. Pierce, 203 Mo. 723; Missouri Lbr. & Min. Co. v. Jewell, 200 Mo. 707; Heckescher v. Cooper, 203 Mo. 278, 293; Hunnewell  v. Burchett, 152 Mo. 611; Coberly v. Coberly, 189 Mo. 16; Hunter v. Wetherington, 205 Mo. 285, 293; Stone v. Perkins, 217 Mo. 586; Hunnewell v. Adams, 153 Mo. 440; Baber v. Henderson, 156 Mo. 566; Rothwell v. Jamison, 147 Mo. 601; Comstock v. Eastwood, 108 Mo. 41; Johnson v. Prewitt, 32 Mo. 553; Preston v. Preston, 202 Pa. 515; Jenkins v. Taylor, 22 Ky. L. Rep. 1137.    (d)  Our statute begins to run against a claimant out of possession, when, and only when, the claimants have a present existing right to commence an action, make an entry and obtain complete relief.   No other person is embraced in or contemplated by the statutes.   Dyer v. Whittler, 89 Mo. 86; Dyer v. Brannock, 66 Mo. 422; Johns v. Fenton, 88 Mo. 64; Harris v. Ross, 86 Mo. 89; Howell v. Jump, 140 Mo. 441; Shumate v. Snyder, 140 Mo. 77; Hall v. French, 165 Mo. 430; Graham v. Ketchum, 192 Mo. 25; Herndon v. Yates, 194 S. W. 46; Powell v. Brown, 214 S. W. 142.   (e)  The plaintiffs were remaindermen and their estate was subject to two successive preceding life estates.   The plaintiffs had no

present, existing right to commence an action, make entry and obtain complete relief, until the termination of these intervening qualified estates, and the statute did not begin to run against them until expiration of the last life estate on December 24, 1917, when their rights to make entry, sue and obtain complete relief accrued, and this action having been instituted within one year thereafter, to-wit, on December 12, 1918, the statute does not bar them. 2 Perry on Trusts (6 Ed.), sec. 858, p. 1402; Lewin on Trusts, (12 Ed.) p. 1123; Case v. Sipes, 217 S. W. 308; Bradley v. Goff, 243 Mo. 95; Houser v. Murray, 256 Mo. 58; Armour v. Frey, 253 Mo. 447; Herndon v. Yates, 194 S. W. 48; Powell v. Bowen, 279 Mo. 295; Lewis v. Barnes, 272 Mo. 397; Gilbert v. Taylor, 148 N. Y. 298; Putnam v. Lincoln Saf. Dep. Co., 191 N. Y. 166, 185; Michoud v. Girod, 4 How. 561; Prevost v. Gratz, 6 Wheat. 481.

*D. H. Eby* and *Ben E. Hulse* for respondents.

(1) There was no trust created by the ninth clause of the will, so far as Minnie A. D. Dunning Ballictt was concerned, wherein the testatrix attempted to impose on the said Minnie the duty to sell the Moss Farm for the purpose of paying the deed of trust indebtedness. Such attempted creation of such trust was violative and in derogation of the rights of the beneficiary under said deed of trust, and the testatrix was without power to create such trust. No title vests in a proposed trustee, by whatever instrument it is attempted to be created, unless such trustee accepts the office. Mrs. Ballictt never accepted the trust thus sought to be created—never qualified as executrix, as she was under the legal statutory prohibition, that of being a married woman, to act as such. Affirmative non-acceptance by Mrs. Ballictt of the trust thus attempted to be created was wholly unnecessary. Sec. 6, R. S. 1879; 39 Cyc. 252; 28 Am. & Eng. Ency. Law (2 Ed.) 936; 1 Perry on Trusts, sec. 259; Armstrong v. Morrill, 14 Wall. 138; Roberts v. Moseley, 51

Mo. 282; Brandon v. Carter, 119 Mo. 572; Oxley Stave Co. v. Butler Co., 161 Mo. 614, 639; Bethune v. Dougherty, 21 Ga. 257; Mahoney v. Hunter, 30 Ind. 246; Acker v. Priest, 92 Iowa, 610; Peck v. Schofield, 186 Mass. 108; Bonesteel v. Bonesteel, 30 Wis. 516; Taylor v. Holmes,. 14 Fed. 498. (2) Plaintiffs contend that by the eleventh clause of the will the testatrix created an express, active trust in favor of Dollie M. Dunning, now Dollie M. Carr, one of the plaintiffs, and appointed Minnie A. D. Dunning Balliett as trustee of such trust. In said clause of the will the following language was used: "and also all of the property willed to Dollie M. Dunning is in trust in the hands of my executor and executrixes for her benefit until she is twenty-one years of age, as she is a minor and has not arrived at the age of discretion." (a) The language just quoted from the will and used by the testatrix in an attempted creation of a trust, created no trust of any character. 40 Cyc. 1713. (b) If any trust were created by the language so used in the eleventh clause of the will, Mrs. Balliett never accepted the trust thus sought to be created, and never qualified as executrix of said will, and was in no sense at any time a trustee thereunder. Authorities under point 1. (c) If any trust at all were created by the eleventh clause of the will (which we deny) it was a simple, passive or dry trust and was executed by the Statute of Uses (Sec. 3938, R. S. 1879; Sec. 8833, R. S. 1889; Sec. 4589, R. S. 1899; Sec. 2867, R. S. 1909; now Sec. 2262, R. S. 1919) and converted into a legal estate in the beneficiary, Dollie M. Dunning. 39 Cyc. 219; Glasgow v. Missouri Car Co., 229 Mo. 585; Jones v. Jones, 223 Mo. 424; Carter v. Long, 181 Mo. 701; Schiffmann v. Schmidt, 154 Mo. 204; Cornwell v. Orton, 126 Mo. 355; Pugh v. Hayes, 113 Mo. 424; Pitts v. Sheriff, 108 Mo. 110; Roberts v. Moseley, 51 Mo. 282; Rector v. Dalby, 98 Mo. App. 189. (d) Although the said Dollie M. Dunning was a minor at the date of the execution and probate of said will, such trust, if any, so attempted to be created by said will, upon the arrival of said Dollie at the age of twenty-one years, became a dry

or passive trust, and said Statute of Uses executed it and vested in her the legal title to any devise made by said will to the said Dollie. 39 Cyc. 225; Ottomeyer v. Pritchett, 178 Mo. 160; Carter v. Long, 181 Mo. 701; Watson v. Hardwick, 231 S. W. 968. (3) William A. Reid, the beneficiary under the deed of trust, could not, by any direction or provision of the will, be deprived of his right to have the same foreclosed upon default in the payment of the secured note, which had been due and unpaid for some seven or eight years. As shown by the oral testimony and the trustee's deed, the Moss Farm was first sold at the foreclosure sale, which was in accord with the request and direction of the testatrix as set forth in her will. The competent and probative evidence in the record does not show that Minnie A. D. Dunning Balliett and William H. Balliett were guilty of any acts amounting to fraud in connection with the foreclosure sale of the land under the deed of trust. (a) Dollie M. Carr, one of the plaintiffs, was not a competent witness to conversations alleged to have taken place between her and Minnie A. D. Dunning Balliett, deceased, but was permitted to testify thereto over the objection of defendants, the question of her competency being taken by the court with the case. Sec. 6354, R. S. 1909; Sec. 5410, R. S. 1919; Elsea v. Smith, 273 Mo. 396, 408; Eaton v. Gates, 175 S. W. 953; Mann v. Balfour, 187 Mo. 290, 304; Burns v. Polar Wave Ice Co., 187 S. W. 147. (b) The price at which the land was purchased at the trustee's sale, as shown by all the evidence, was above sixty per cent of its then reasonable value and should have no influence as bearing upon the alleged fraud charged by plaintiffs. Keith v. Browning, 139 Mo. 190; Hardwick v. Hamilton, 121 Mo. 465; Real Estate Co. v. Building Co., 196 Mo. 358; Markell v. Markell, 157 Mo. 326; Harlan v. Nation, 126 Mo. 97; Maloney v. Webb, 112 Mo. 575. (4) The plaintiffs' cause of action, if any they ever had, is barred by both the five-and ten-year Statute of Limitations. Sec. 1879, R. S. 1909; Sec. 1305, R. S. 1919; Sec. 1888, R. S. 1909; Sec. 1316, R. S. 1919; Sec. 1889, R. S. 1909; Sec.

1317, R. S. 1919; Faris v. Moore, 256 Mo. 123; Burdett v. May, 100 Mo. 13; Ivy v. Yancey, 129 Mo. 501; Reed v. Painter, 145 Mo. 356; Hudson v. Cahoon, 193 Mo. 547; Landis v. Saxton, 105 Mo. 489; Buren v. Buren, 79 Mo. 538; Goodwin v. Goodwin, 69 Mo. 617; Rogers v. Brown, 61 Mo. 187; Ricords v. Watkins, 56 Mo. 553; Hunter v. Huner, 50 Mo. 445; Kelly v. Hurt, 74 Mo. 572; 16 Cyc. 658; 24 Am. & Eng. Ency. Law (2 Ed.) p. 391. The plaintiffs' cause of action, if any they have, is also barred by laches. Rutter v. Corathers, 223 Mo. 640; Shelton v. Horrell, 232 Mo. 375; Troll v. St. Louis, 257 Mo. 626; Wells v. Perry, 62 Mo. 573.

HIGBEE, P. J.—Plaintiffs sued to set aside the foreclosure of a deed of trust and the trustee's deed pursuant thereto, and to determine title to a farm of 240 acres devised to them in remainder by Mary Ann Dunning. From a judgment for the defendants, plaintiffs appealed.

The testatrix and her husband, Adrian H. Dunning, on April 20, 1877, conveyed three farms in Shelby County, owned by her, by their deed of trust to Daniel Taylor, in trust to secure the payment of their note to William A. Reid of even date for the sum of $5,000 at one year, with interest from maturity at the rate of ten per cent per annum. The deed contained the usual power of sale. These farms contained, respectively: the C. E. Moss farm, 420 acres; the home farm, 270 acres, and the river farm, 240 acres. Mrs. Dunning also owned several lots in the town of Hunnewell in Shelby County, on one of which was her residence, in which she and her husband and family resided. On September 30, 1878, she and her husband encumbered these lots with a deed of trust to secure the payment of interest bearing notes aggregating the sum of $986.54. On November 26, 1878, Mrs. Dunning executed her will, which, for convenience, appellants' counsel has divided into paragraphs.

By paragraph 2, she devised to her husband certain lots in the city of Hannibal, in Marion County, and five

lots in the town of Hunnewell; also the river farm of 240 acres to her husband during his natural life; "at his decease said farm is to be given to Miss Louisa A. Dunning, during her natural life, and at her decease to go to her heirs, if any, and to Dollie M. Dunning. One-half of said farm to Dollie M. Dunning, and the balance, if Louisa A. Dunning has no heirs, as she, Louisa A. Dunning, chooses to dispose of it."

By paragraph 3, she devised the 270 acres known as the home farm, to her daughter, Minnie A. D. Dunning Balliett, during her natural life and at her decease to her husband, W. H. Balliett, to dispose of as he shall choose.

Paragraph 9: "Imprimis. My will is that all my just debts and funeral charges shall be by my executor and executrix hereinafter named, be paid out of my estate as soon after my death as shall by them be found convenient. It is my express will and order, as well as desire, that the C. E. Moss Farm [describing it] be thoroughly advertised and sold either at public auction or private sale to clear my other property in Missouri, from encumbrance and I hereby bind my executor and executrixes hereinafter mentioned, to carry out to the best advantage this part of my last will and testament, hoping that the sale of my farm will pay all my just and honest debts."

Paragraph 11: "All the real estate in this will not mentioning the county, is all in Shelby County, Missouri, and also all the property willed to Dollie M. Dunning is in trust in the hands of my executor and executrix for her benefit until she is twenty-one years of age, as she is a minor, and has not arrived at the age of discretion. I hereby appoint Adrian H. Dunning, my husband, as executor, and Louisa A. Dunning, his sister and Minnie A. D. Dunning Balliett, my daughter, as executrixes of this, my last will and testament, without giving security or filing bond, as I have no unsecured debts and in case of the death of Dollie M. Dunning her share reverts to Minnie A. D. Dunning Balliett."

The testatrix died January 17, 1881. Her will was admitted to probate on February 4, 1881, and Adrian H. Dunning and Louisa A. Dunning were appointed executor and executrix thereof, and letters testamentary, with the will annexed, were duly issued. The married daughter, Mrs. Balliett, being disqualified, did not qualify as executrix.

Dollie M. Dunning, an orphan child, born December 17, 1869, was taken into the Dunning home when two or. three weeks old, given the Dunning name and reared as a member of the family. She never knew she was not a child of Mr. and Mrs. Dunning. She lived with her foster parents until Mrs. Dunning's death, January 17, 1881, Dollie then being eleven years of age. Louisa A. Dunning was also a member of the family, The family continued to live in Hunnewell for two years and then went to live with Minnie and her husband, W. H. Balliett, who lived on the home farm two miles north of Hunnewell. Dollie continued to live as a member of the Balliett family until she was married to Mr. Carr in September, 1890.

Mr. Dunning is described by the witnesses as being eccentric. Shortly after the death of. Mrs. Dunning, as early as 1882 or 1883, his mind began to fail. About the year 1890 or 1891, he was taken to the State Hospital for the Insane at St. Joseph and died there May 10, 1893. There was read in evidence a record entry of an order of the Probate Court of Shelby County at its May term, 1888, continuing the annual settlement of the guardian in the "matter of the estate of A. D. Dunning, Insane." By way of explanation, it may be said that the court-house at Shelbyville was burned in 1891, and the files destroyed by fire, but most of the record books were saved. The probate records show that W. H. Balliett was appointed guardian of Dollie M. Dunning, a minor, December 3, 1883, and gave bond in the sum of $100. He filed a settlement July 6, 1885. The record entry states that he had received no assets or property belonging to his ward. A record entry of February 12, 1889, recites the approval of the settlement of W. H. Balliett, *curator*

of the estate of Dollie M. Dunning; that she had attained her majority and acknowledged she had received all the moneys due her from her curator and that he be discharged.

Louisa A. Dunning, who was a sister of A. H. Dunning, died single and intestate, December 24, 1917. Mrs. Minnie Dunning Balliett was the only surviving child of her parents and died testate February 2, 1918. She left one child, Irene Balliett Barr, wife of Ralph Barr, one of the defendants.

The controversy in this case arises over the foreclosure of the deed of trust given by Mr. and Mrs. Dunning, April 20, 1877, on the three farms of 420, 270 and 240 acres respectively, to secure the payment of the $5,000 note to William A. Reid. By paragraph 2 of the will, the 240-acre farm was devised to Mr. Dunning for life, then to Louisa A. Dunning for life, and at her decease one-half was to go to her heirs, if any, and one-half to Dollie M. Dunning. The plaintiffs, other than Dollie M. Carr, are the collateral heirs of Louisa A. Dunning.

The 270-acre or home farm was devised to Mrs. Minnie Balliett for life, with remainder to her husband, W. H. Balliett, By paragraph 9, the testatrix ordered and directed her executor and executrix to thoroughly advertise and sell the Moss farm of 420 acres to clear her other property of all encumbrances and pay all her debts. No debts were proved against her estate. Her debts consisted of the two deeds of trust. The scheme of testatrix was that by selling this tract of 420 acres, the other two farms and the home property in Hunnewell would be cleared of all indebtedness and her surviving husband, his sister and Dollie, would continue to occupy the family residence in Hunnewell. Dollie, who was a mere child, was one of the special objects of her care. All the property devised to Dollie was placed in trust in the hands of Mr. Dunning, Louisa A. Dunning and Mrs. Balliett for Dollie's benefit until she became twenty-one years of age. Notwithstanding the positive directions in the will to sell the Moss farm of 420 acres, they were

ignored.   On August 30, 1886, this farm and the river farm of 240 acres were sold, in the order named, by the trustee under the Reid deed of trust.   Mrs. Balliett bought the Moss farm at $4,000, which, the evidence shows, was conservatively worth $7,000.   The river farm was also bought by her at $1646.44.   This, the evidence shows, was reasonably worth $3600.   Reid executed a quit-claim deed to Mrs. Balliett releasing the 270-acre farm.   The Ballietts thus acquired title to the three farms.   The evidence shows that the Balletts refused to pay the interest on the Reid mortgage, and induced the trustee to foreclose the deed of trust in order that they might acquire title to the three farms.

Over the objection of the defendants, Mrs. Carr (Dollie Dunning) testified:

"Mrs. Balliett told me that she had to help pay the interest on the mortgage and she told me she was going to let it be foreclosed, so that she would get the title in her name and her father couldn't run through it if he was so minded, or Aunt Louisa couldn't.   She said she would give me the Salt River farm; that she would deed it to me, but she didn't want them to have it, and she told me that before she went to Shelbina, before the mortgage was foreclosed; it was a day or two before the sale that she talked to me about it a good deal.   I was sixteen years old and was living with her as a member of her family.   She told me there wasn't any bid against her. She said Mr. Reid said there was no need of paying the interest and letting it go on as it was.   She told me several times she was going to give it back to me.   I believed her and relied upon what she said.   William H. Balliett said that she had the title made to her when the deeds were made and it was sold under the deed of trust and it should have been made to him.   He told me one time, as we were going from Monroe and I asked him if he had any money and he says, 'We want to pay you the rent on the Salt River farm, but we are always so behind we never have the money to spare.' That was before Mrs. Balliett's death."

John Arr testified he heard William H. Balliett say there was no money left to pay the interest on this mortgage, and through the advice of Tom Davis he let them foreclose it and then he bought it back and made the change that way. "The object was, it seemed, they were paying the interest and the other party would get the good of it and it left no funds to meet this indebtedness or interest and they let it go and bought it in themselves."

William Mefford testified that William H. Balliett told him "we had the land sold in order to get the deed."

M. M. Ameen testified he worked for Mrs. Balliett from 1912 until she died in 1918. "The 270-acre farm was a mile and a half or two miles north of Hunnewell. She told me Hugh Carr wanted to buy eighty acres of this farm, and she got me to show him the lines and we came back and got to talking about the price and the next day she backed out and she said: 'That farm is willed to Dollie after my death, but we had some mortgage on three farms and had been paying too much interest on that land.' She told me she was advised to foreclose the mortgage and buy the land in. She said after they bought the land she come home and Dollie found the land had been sold and commenced crying and she said, 'I bought the land in and it will be willed to you after my death; it is willed to you and you will have it after my death,' and she says, 'I can't sell the land, of course, and I don't like to sell it on Dollie's account.' She said she made the first bid and nobody bid against her."

Hugh P. Carr, testified that in the fall of 1914 he bought eighty acres of timber land from Mrs. Balliett of the 240-acre farm on Salt River, at $30 per acre. "She sent Mr. Ameen with me to see it. I went back and told her I would take it if I could get the money. In a few days I was ready to fill the contract and when I went back she backed out on me. She said she didn't believe she wanted to sell it yet."

On September 18, 1917, W. H. Balliett and his wife conveyed to their daughter the north 320 acres of the

420-acre C. E. Moss farm for the recited consideration of love and affection and $100, subject to a deed of trust for $5,000 which the grantee assumed.

W. H. Balliett testified that Dollie M. Carr (Dollie M. Dunning) was about one year old when he came to Missouri in 1872. She was living with A. H. Dunning and continued to live with him till she was eleven years old. "She then came to live with us for about fifteen years. Don't remember exactly when she was married. I was present when Daniel Taylor, the trustee, sold the two farms, August 30, 1886, under the Reid deed of trust. There were fifteen or twenty present. He sold the Moss farm first for $4,000. There were one or two bids besides Mrs. Balliett's. Then the 240 acres was sold to Mrs. Balliett for sixteen hundred and something. One or two bid on that. I never asked Reid to have that land advertised and sold. Never talked with him about selling it. The first I knew of the sale was through the paper at Shelbina. Mrs. Balliett didn't ask Reid or Taylor to let the land be sold that I know of. John Orr asked me one time what we let the land be sold for, and I told him we couldn't pay the interest on it and sold it. I stated we didn't have the money to pay the interest and the land had to be sold. I didn't tell Mefford I had the land sold that I might get a deed to it. I told him it wouldn't pay the interest and the land had to be sold. Mr. Taylor executed a trustee's deed to Mrs. Balliett to the Moss and Salt River farms. After that date she had control of the river farm until her death in February, 1918. Irene Barr got it after Mrs. Balliett's death and she is in possession of it now. Mrs. Balliett had charge and control of the Moss farm from the date of the sale at Shelbina till her death. Since her death, Irene Barr has had control of it. After Mrs. Dunning's death, Mrs. Balliett had charge and control of the home of 270 acres until her death, and lived on it for ten years. Louisa and Dollie lived there with her. Since Mrs. Balliett's death I have had charge of it. I live

there now.    Mrs. Balliett paid the taxes on the river farm since August 30, 1886.  She would go down herself and pay it.  I was not with her.  She paid the taxes on the Moss and home farms.  I saw the tax receipts.  Since her death Irene Barr has paid the taxes on the 240-acre farm.  The plaintiffs have never brought any suit of any kind concerning any of these farms.''

Cross-Examination: ''Mrs. Balliett was an educated woman, a good business woman, and always did all the business, the matter of looking after these farms and mortgages and the will of Mary Ann Dunning, and those matters, was all entrusted to her.  From the death of Mrs. Dunning in 1881, until the sale of this real estate under the foreclosure, she handled and did all the business.  Most of the sales of her farm products and payment of taxes was looked after by her personally.  We may have talked about Mrs. Dunning's will.  I don't remember.  I don't remember what we said about it.  It seems to me the will was never read.  I never knew anything about it.  The contents of the will was concealed from me; I don't remember seeing it.  What I knew of it my wife told me.  I told Mr. Orr we couldn't pay the taxes on the land and it was going to be sold.  Neither Mrs. Balliett nor I made any attempt to get anyone to bid on the lands.  I don't know that Mrs. Balliett caused it to be known she was going to buy the land.  My wife never offered the Moss farm for sale prior to August 30, 1886.  Neither Dunning nor Louisa Dunning ever offered to sell the Moss farm up to the time it was foreclosed that I remember of.  They went to court and got permission to rent it and said they couldn't sell it.  They took the money they received from the rent of this land and paid it on the Reid note.  We farmed the Moss farm ourselves most of the time.  We paid $400 rent to Dunning.  He paid it to Reid, I guess.  Hightower lived on it four or five years.  I don't know how much rent he paid, think about the same, about $400 a year.  All the payments made on the $5,000-note

to Reid was the rent off the Moss farm except the last year, 1884 or 1885. Mr. Dunning and Louisa borrowed $300 from my mother to pay Reid. The Moss farm was to be rented and pay off the mortgage and sold. My wife contributed nothing toward the interest on that mortgage that I know of. The river farm was rented two years to John Orr and three years to Jacobs, up to 1885, for $160 a year. ''Q. The 270-acre farm was willed to you and your wife, yet you contributed nothing to pay the interest or principal of the Reid mortgage? A. That will said that the Moss farm was to be rented and sold to pay this mortgage. They told me what was in the will. Dunning, in his lifetime, took spells of spending money. He would spend lots of money. Q: You filed a complaint in the probate court to have Dunning removed as executor of the estate? A. Not that way. He wasn't trying to settle the estate and I come up and seen Judge Myers and afterwards withdrew it. I don't remember what the ground of complaint was. Q. Was Dunning ever tried for insanity in any court in Shelby County? A. Not until the last, he wasn't. I don't know whether he was or not. I think Louisa wanted to settle up the estate and carry out the provisions of the will. I thought Dunning was spending the money instead of putting it on the mortgage and I come up and spoke to Judge Myers about it. Dunning died in the asylum at St. Joe in 1893. He had been there two or three years. His mind began failing after his wife died. When I filed the complaint against him in the probate court he was acting kind of queer; he wasn't crazy. We had to keep him up in his room. We was afraid of him; the women people were.''

I. The land involved in this action is the 240-acre farm lying on Salt River. It was devised to A. H. Dunning for life, at his death to Louisa A. Dunning, his sister, during her life; at her death, one-half to her heirs and one-half to Dollie M. Dunning, the plaintiff

Mrs. Carr.    The other plaintiffs are the collateral heirs
of Louisa A. Dunning, who died December
24, 1917.   The will recites that all the prop-
erty willed to Dollie M. Dunning "is in
trust in the hands of my executor and executrix for her
benefit until she is twenty-one years of age."   The same
paragraph appoints A. H. Dunning, Louisa A. Dunning
and Mrs. Balliett executor and executrices of the will.
The evidence discloses a flagrant breach of trust.   Para-
graph 9 of the will ordered the executors, as soon after
the death of the testatrix as convenient, to thoroughly
advertise and sell the Moss farm to clear the encum-
brances and pay her debts.   There were no debts other
than the two deeds of trust aggregating $5864.54, prin-
cipal.

Breach of
Trust.

The three designated as executors were made the
donees of a power and a trust.   As said by Judge ELLI-
SON:   "Now, whenever they are named for that purpose,
they are trustees as well as executors, and it is in the
character of trustees that they make the sale; as, in-
deed, even though they should refuse to qualify as exe-
cutors, they might nevertheless execute the power as
trustees."   [Compton v. McMahan, 19 Mo. App. 494,
506.]

II.   It will be observed that the Moss farm was not
bequeathed to anyone, but was expressly devised for the
specific purpose of clearing the encumbrances in order
to preserve the other two farms for the devisees.   The
effect of this provision of the will was to convert the
farm into money.   It became a trust fund
in the hands of the trustees charged with
the trust of discharging the two deeds of
trust. [De Lashmutt v. Teetor, 261 Mo. 412, 436; Nall v.
Nall, 243 Mo. 247.] It is contended, however, that Mrs.
Balliett did not qualify as executrix or accept the trust.
There is no suggestion in the evidence that she ever de-
clined it.   As early as 1883, her father's mind became
impaired and he became more or less incapacitated for

Trust:
Acceptance.

business, so that Mr. and Mrs. Balliett took him, Louisa and Dollie from Hunnewell where they were living, into their home and assumed the responsibility of caring for them. Dollie was then about thirteen years of age. Balliett was appointed and acted as her guardian and curator until her majority. Incidentally, this affords an inference of Mr. Dunning's mental incapacity, else there was no reason for Balliett's appointment. Although Balliett feigned ignorance of the will, yet it is clear from his evidence that his wife, who had a copy of the will, was a good business woman; that she did all the business and looked after the farms, mortgages and Mrs. Dunning's will. All these matters were entrusted to her. From the death of her mother in 1881 until the sale under the deed of trust, August 30, 1886, "she handled and did all the business." Although Balliett testified that the will was concealed from him, yet he excused himself and Mrs. Balliett for not contributing at any time to pay the interest on the deed of trust by saving, "That will said that the Moss farm was to be rented and sold to pay this mortgage. They told me what was in the will." From all the circumstances, it is plain that Mrs. Balliett was well informed as to the provisions of the will; that she took Dollie under her protection and, in the absence of any disclaimer, her acceptance of the trust will be presumed. It needed no act to indicate her acceptance. [39 Cyc. 77, 79.]

In Jamison v. Zausch, 227 Mo. 406, 415, it is said:
"In Roberts v. Moseley, 64 Mo. 507, it is said:
" 'After a lapse of years the acceptance of the trust may be presumed, even when no act has been done by the trustee to indicate an acceptance. In the case at bar there was no act for the trustee to perform. His duty under the deed, was simply to permit the beneficiary, Mrs. Moseley, to have the use and occupation of the land, and if he had never exercised any control over the property whatever, the fact that he knew of the execution of the deed, and procured a copy for his own

use, would amount to an acceptance, in the absence of a disclaimer, by word or act, after the lapse of six years.' Again in Brandon v. Carter, 119 Mo. l. c. 582, this court held that, while acceptance of a trust is necessary to the vesting of a title in the trustee, such acceptance 'may often be implied or established by inference.' We are of the opinion that the plaintiff is estopped from claiming an interest adverse to the trust under which he held title, and by the terms of which he covenanted to convey all interest yet in him to his wife's devisees.''

III. Dunning was mentally incapacitated. It does not appear that Louisa A. Dunning had any business capacity. On the other hand, Mrs. Balliett was a woman of affairs and dominated those about her. From a careful consideration of the evidence, the conclusion is unavoidable that, acting in collusion with Mr. Reid, she induced the trustee to sell the Moss and river farms under the deed of trust on the pretext of having no money to pay the interest, for the purpose of defeating the trust imposed on her and her co-trustees and of acquiring title in herself to both the farms. In so intermeddling with the trust property she became liable as a trustee *de son tort*. [1 Perry on Trusts (6 Ed.) sec. 245; Putnam v. Lincoln Safe Deposit Co., 191 N. Y. 166, 185; Case v. Goodman, 250 Mo. 112; Case v. Sipes, 217 S. W. 306, 308.]

IV. In Stitt v. Stitt, 205 Mo. 155, 165, Judge LAMM, said:

"Defendant seeks to bring herself within the doctrine of those cases in which an administrator, owing no duty and having no power to protect the interests of creditors and heirs in the real estate of a decedent and dealing at arm's length with all concerned, buys at an execution or foreclosure sale. Dillinger v. Kelley, 84 Mo. 561, is a sample of such cases; but that case and no well-considered case, carefully read, promulgates any rule inimical to this decree. Here the de-

*Violation of Trust: Personal Benefit.*

fendant was a trustee in the most exacting sense; for she had power and she had duty and had assumed the role of using the power in performance of that duty. Not only was she armed under the order of sale with power to do that duty, but in this instance ability to perform lay at her door, ready to her hand. Not only so, but she was placed in a most delicate and anxious position—a position watched by a chancellor with a solicitous eye, to be weighed and considered with a piercing and distinguishing judgment; because duty and power of performance were set over against self-interest. She set one in one eye and the other in the other. The love of money is the root of all evil; and when one is bound in a confidential relation it is of the very essence of things to see to it that the strident and clamorous voice of self-interest does not drown out the still, small voice of duty and conscience.

" 'No one' says WILLIAMS, J., in Tuggles v. Callison, 143 Mo. l. c. 536, 'will be permitted to purchase and hold property as his own, where he has a duty to perform in relation thereto inconsistent with his position as a purchaser on his own account, and so the cases all hold.' Such purchase becomes of a poisonous character. The temptation existing, the correlative duty to remove it exists. In the case at bar the executrix could have sold tract C under the court's order for enough to have paid the mortgage debt, together with all the debts at large of the estate and the cost of administration. With one hand she put away from her this duty, with the other she clutched the gain of violating that duty. Defended by the bulwark of a homestead claim to the residue of the real estate, she left the heirs and creditors to help themselve as best they may, with tract C canceled as a debt-paying factor."

A court of conscience will not permit Mrs. Balliett thus flagrantly to violate her trust and reap the benefit. She was not only under the obligation of this trust, but Dollie was a mere child and a member of her family, and

while Balliett was nominally Dollie's guardian and curator, yet it was Mrs. Balliett who morally held that fiduciary relation. She was indeed under a three-fold tie. The will required her to sell the farm to clear the encumbrances. Equity will hold her as having sold it and treat her as having the purchase money in her hands as a trust fund for the purpose of executing the trust. In an early English case, it is said:

"The forbearance of the trustees in not doing what it was their office to have done, shall in no sort prejudice the *cestuis que trusts;* since at that rate it would be in the power of trustees, either by doing, or delaying to do, their duty, to affect the right of other persons; which can never be maintained. Wherefore the rule in all such cases is, that what ought to have been done, shall be taken as done, and a rule so powerful it is, as to alter the very nature of things; to make money land, and on the contrary, to turn land into money; thus money articled to be laid out in land, shall be taken as land, and descend to the heir; and on the other hand, land agreed to be sold, shall be considered as personal estate." [Lechmere v. Earl of Carlisle, 3 P. Wms. 215, 24 Eng. Rep. Ful. Repr. l. c. 1035.]

Mrs. Balliett, without competitive bidders, bought the Moss farm for $4,000 and the river farm for $1646. Her bids were nicely calculated. They were just enough to pay the deeds of trust, interest and costs. This left the 270 acres clear, in which she held the life estate, with remainder to her husband. The evidence, however, shows that the Moss farm was reasonably worth $7,000. A number of witnesses placed the valuation much higher. At any rate, equity regards that as done which ought to have been done. It regards the farm as already converted into money as a trust fund in her hands. At a fair sale the Moss farm would have realized more than enough to have paid both encumbrances and accumulated interest. Our conclusion is that this sale must be regarded as having been made by Mrs. Balliett under the

power of sale vested in her by the will; that both deeds of trust were satisfied by the sale of the Moss farm and that she took the title to the river farm of 240 acres in trust for the remaindermen.

V.  We need not consider the defendants' plea of the statutes of limitation, nor their objection to the competency of Mrs. Carr as a witness as to her conversations with Mrs. Balliett.  Appellants cite in support of her competency: McKee v. Downing, 224 Mo. 115, 136; Ivy v. Yancey, 129 Mo. 501, 508; Graham v. Wilson, 168 Mo. App. 185, 190, and other cases. Whether Mrs. Balliett's possession was friendly or hostile is immaterial.  The plaintiffs had no right to the possession of the premises until the death of the second life tenant in the year 1917; hence the question of adverse possession is not in the case.  [Case v. Sipes, 217 S. W. 306, 308 (7); Bradley v. Goff, 243 Mo. 95, 102.]

*Limitations.*

The case should be dismissed as to the second count of the petition, and as to all of the defendants except Irene B. Barr, Ralph Barr, and W. H. Balliett.  The other defendants, who are the heirs of W. A. Reid and Daniel Taylor, the trustee, have no interest in the case.

*Parties:
Judgment.*

The judgment is reversed and the cause remanded with directions to enter judgment divesting the title out of the defendants as to the river farm of 240 acres, and investing the title to an undivided one-half thereof in Dollie M. Carr and the title to the other one-half thereof in the other plaintiffs, after ascertaining and defining their respective interests therein, and to assess the value of the annual rents and profits of the premises since the date of the commencement of this action (less taxes actually paid by defendants since said date), and to enter judgment for the value of said rents and profits in favor of the plaintiffs and against the. defendants and for costs of suit.  All concur.