CHARLES VICTOR LIVINGSTON, Respondent, *v.* NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Appellant.

Third Department, November 10, 1920.

Wills — real property — devise of life estate with remainder to eldest son of life tenant — request of testator that devisee shall not sell to strangers — when such request does not invalidate devise — conveyance of life tenant in hostility to rights of remaindermen — when grantee of life tenant does not obtain title — ejectment — adverse possession — estoppel.

Where a will devised realty to the testator's nephew " during the term of his natural life, and at his decease to descend to the eldest son of my said nephew who shall then be living," with contingent remainders over,

the nephew merely took a life estate and at his death a title in fee passes to his eldest son who survived him.

Such devise is not invalidated by the fact that the testator in a subsequent clause in the will enjoined upon his nephews and such of their children as might become possessed of the realty under the will not to sell the same to strangers and expressed the desire that the farm should remain in the possession of the family, for there was no penalty attached to a disobedience of the testator's expressed desire so that it was not a condition precedent to the vesting of the fee and the will contains a clear implication that the devisee has power to sell. At the most, there was merely a restraint or limitation upon the power of alienation — not a total denial of that power.

Where the life tenant holding under said will conveyed the premises by an instrument purporting to vest his grantee with a fee and covenanted that his descendants shall forever be estopped and barred from claiming title, the conveyance was ineffective to defeat the title of said remainderman, and hence where a railroad company, having a power to exercise the right of eminent domain, instead of doing so bought the premises in reliance upon the title of the life tenant's grantee, it acquired no title as against said remainderman who can assert title in an action of ejectment brought after the death of the life tenant.

Said action of ejectment is not barred because the railroad company has been in possession for more than twenty years under the deeds aforesaid.

If the defendant possessed of the right of eminent domain chose to deal with one who had only the rights of the life tenant, it cannot now be heard to urge an estoppel, for at the bottom of an estoppel lies either fraud or something which operates as such, and the plaintiff cannot be said to have acted fraudulently by remaining quiet until his rights in the premises had become fixed. As the defendant had constructive notice of the plaintiff's rights its entry upon the premises was wrongful and not adverse.

APPEAL by the defendant, New York, Ontario and Western Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Sullivan on the 16th day of March, 1920, upon the decision of the court rendered after a trial at the Sullivan Trial Term, the jury having been discharged.

*C. L. Andrus,* for the appellant.

*Dean, Tracy & McBarron* [*Randall J. LeBoeuf* of counsel], for the respondent.

WOODWARD, J.:

This is an action in ejectment. Edward Livingston, at the time of his death in 1864, resided upon a farm of 200

acres in Sullivan county. This was a part of the original Hardenburgh Patent. By his last will and testament he gave to his nephew, Charles Octavius Livingston, this farm of 200 acres, including the equipment and household goods, " to be used and enjoyed by my said nephew during the term of his natural life, and at his decease to descend to the eldest son of my said nephew who shall then be living," etc. Provision was made for the disposition of the property in the event of death, but none of the contingencies have occurred. Charles Octavius Livingston died on the 30th day of May, 1914, leaving the plaintiff in this action as his eldest son, and the title, which up to that time was more or less contingent, became vested in the plaintiff, unless the will of Edward Livingston was void in its inception.

It is not seriously questioned that, under the terms of the will of Edward Livingston, Charles Octavius Livingston took merely a life estate. The will under which this resulted, if valid, was duly probated on the 10th day of June, 1864, giving notice of the condition of the title. In 1871 Charles Octavius Livingston, disregarding this limitation of ownership, attempted to grant the premises to one Medad Morss for the expressed consideration of $6,800. This deed purported to convey the fee, and the grantor entered into a covenant which of itself was intended to give notice of the defect in his title, for " unusual clauses always excite suspicion " (Broom Leg. Max. [8th Am. ed.] 289), to the effect that " the children and descendants lawful issue of him the said party of the first part each and every of them, shall be forever estopped and barred from claiming any title estate or interest in the said lands or any portion thereof by inheritance through him the said party of the first part," etc. The defendant through mesne conveyance from Medad Morss has been in possession of the premises involved in this action for more than twenty years, and the theory of the defense is that the original will of Edward Livingston was void, and that this continued possession under color of title for a period of twenty years has operated to give the defendant title.

There can be no doubt that the will of Edward Livingston, by its terms, vested the fee of the farm, of which the premises in dispute are a part, in the eldest surviving son of Charles

Octavius Livingston upon the termination of the life estate. The suggested defect in the will, and which it is claimed operated to defeat the devise, is found in the unnumbered paragraph, following the gift, "And I hereby enjoin upon my said nephews and such of their children who may at any time become possessed of the said farm under this will that they do not sell or in any manner part with the same, it being my desire that the said farm with the appurtenances shall remain in the possession of my family, and that the same should not be sold or pass into the possession of strangers."

It is to be observed that there is no penalty attached to a disobedience of this expressed desire. It is not a condition precedent to the vesting of the fee, and there is a clear implication that the devisee has the power to sell. No effort is made to provide for a reversion; there is simply a strongly expressed desire on the part of the testator to have the property kept in the family. This purpose of the testator is not a positive command, entering into the essential scheme of the will; the fair reading of the entire provision is apparently that there shall be no sale to strangers. The dominant thought is that the "farm with the appurtenances shall remain in the possession of my family, and that the same should not be sold or pass into the possession of strangers." He had himself provided for the passing of the property to other nephews in the event of death in the line he had chosen, and for the female line to take in the event of a failure of males, and it can hardly be doubted that it would be well within the spirit of the instrument if the plaintiff in this present action should sell or give the property to his male cousin. Clearly the property would be liable for the judgment debts of the owner of the fee; nothing in the provisions of the will operated to take it out of the control of the law, and the most that can fairly be said of the provision here under consideration is that it is a restraint or limitation upon the power of alienation — not a total denial of that power.

In the great case of *De Peyster* v. *Michael* (6 N. Y. 467) it was held, upon a full and careful review of the law up to that time, that by the act of October 22, 1779 (Laws of 1779, chap. 25, § 14; 1 Jones & Varick, 44), and the act of February 20, 1787 (Laws of 1787, chap. 36; 2 J. & V. 67; 1 R. L. 70), all

feudal tenures came to an end; that these statutes were retroactive and that since their passage all restraints upon alienation contained in conveyances in fee, whether executed prior or subsequent to the date of those acts, were void. In the course of the discussion the court quotes from Littleton (§ 360) and lays down the proposition that it is "a well established principle that where an estate in fee simple is granted, a condition that the grantee shall not alien the land is void," and adds: "Coke, in his commentary on this section, adds: 'And the like law is of a devise in fee upon a condition that the devisee shall not alien, the condition is void.'"* "The right of alienation," say the court, "passes by the grant of the fee as perfectly as if it were given by the express terms of the grant. Without such right the estate granted would be neither a fee simple, nor any other estate known to the law. Lands granted in fee on condition that the grantee shall not enjoy the lands, or shall not take the profits of the lands; or on condition that the heir of the grantee shall not inherit the lands; or on condition that the grantee shall not do waste, or on condition that his wife shall not be endowed, in all these and the like cases, the condition is void as repugnant to the estate. (Shep. Touchstone, 131.) 'A condition annexed to an estate given, is a divided clause from the grant, and therefore cannot frustrate the grant precedent, neither in anything expressed, nor in anything implied which is of its nature incident and inseparable from the thing granted.' (Hobart, 170.)" In the case of *Continental Insurance Co.* v. *New York & Harlem R. R. Co.* (187 N. Y. 225, 237) the court, speaking through Chief Judge CULLEN, says: "Ever since the decision in *DePeyster* v. *Michael* (6 N. Y. 467) it has been the settled law in this State that a covenant restraining alienation by the owner of the property in fee is void, and that such a covenant can be supported only where the covenantee has a reversion in the property."

It must be clear, in the light of these authorities, as well as those relied upon by the respondent, that the condition following the gift to the plaintiff in this action, in so far as it is a restraint upon alienation, is void; that it is "a divided clause

---

* Coke Litt. 223a.— [REP.

from the grant, and therefore cannot frustrate the grant precedent." (*DePeyster* v. *Michael, supra.*) And the reason why such a condition cannot be made good by agreement or consent of parties is that a fee simple estate and a restraint upon its alienation cannot in their nature co-exist. The ownership of the fee cannot exist in one person while the ownership of the right of alienation and its fruits exist in a different person. (*DePeyster* v. *Michael, supra.*) It is the condition which the testator sought to impose upon the grant, and not the grant itself, which is void, and when that which is void is eliminated there is a perfectly good devise of the fee of the Sullivan county farm in the plaintiff in this action, and there is no reason to suppose that the testator would have made any different disposition of his estate if he had appreciated the limitations which the law imposes.

The fact that the plaintiff's father undertook to grant more than he owned has no bearing on the problem. He could not convey the fee; he was limited by the life estate which had been given him, and the rights of his eldest son, which vested subject to contingencies upon the death of the testator, and became absolute upon the death of plaintiff's father in 1914, were not disturbed or divested by any action which the defendant might have taken short of an exercise of its franchise right of condemnation. So long as the plaintiff's father was in possession of the life estate there could be no adverse possession of the fee; during the life of the tenant for life neither his possession nor that of his grantee can be adverse to that of the remainderman. (*Christie* v. *Gage,* 71 N. Y. 189; *Jefferson* v. *Bangs,* 197 id. 35, 43.) No action which the plaintiff might have taken prior to the death of his father, the life tenant, could have availed him anything practical (*Jefferson* v. *Bangs, supra*), and we find no element of estoppel in his remaining passive until the happening of the event which finally determined his rights under Edward Livingston's will. The public records at all times showed that the title to this property must vest eventually in one other than the life tenant, and if the defendant, possessed of the right of eminent domain, chose to deal with one who had only the rights of the life tenant it cannot now be heard to urge an estoppel, for at the bottom of an estoppel lies either fraud, or some-

thing which operates as such (*Wilmore* v. *Flack*, 96 N. Y. 512, 520), and the plaintiff cannot be said to have acted fraudulently by remaining quiet until his rights in the premises had become fixed. The defendant, with constructive notice of the rights of the plaintiff, entered into possession of the premises as it now contends adversely. Such entry was wrongful, and it had not the excuse of necessity, for it at all times had the power of eminent domain, and could have condemned and paid for the property which it desired.

The judgment appealed from should be affirmed.

Judgment unanimously affirmed, with costs.