No. 34,114

M. Q. Cox, *Appellee*, v. LEOTA M. WATKINS, JAMES A. BUCKLES and
EMMA E. BUCKLES, His Wife; BURT BROWN, E. T. JESTER and
ALBERTA JESTER, His Wife; JOHN W. HOWARD, MARY JANE
HOWARD, His Wife, et al., *Appellants*.

(87 P. 2d 243)

Opinion filed January 28, 1939.

*Paul W. Schmidt* and *M. P. Shearer*, both of Wichita, for the appellants.

*Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Sidney J. Brick, Lawrence Curfman, Al Blase, Jr.,* and *Robert E. Blase,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: On March 18, 1937, plaintiff filed this action under
G. S. 1935, 60-1801, to quiet her title to a described 80 acres of land
in Sedgwick county. Several of the defendants answered, pleading
laches and statutes of limitations, separately claiming specific 10-
or 20-acre tracts of the land under deeds executed by plaintiff, and
claiming to be in possession, and asking that their titles be quieted
as against plaintiff. Her reply contained a general denial and a
specific denial that she executed or authorized the execution of the
deeds relied upon by the answering defendants. Because of these
claims in the answers plaintiff brought separate actions in ejectment against each group of defendants claiming under the separate

deeds, in which substantially the same issues as to title and possession were formed. All these actions were consolidated and tried to the court as one. The trial court made findings of fact and conclusions of law and rendered judgment for plaintiff. The contesting defendants have appealed.

The pertinent facts are well stated in the findings of the trial court, which are as follows:

"I. It is admitted in this case that M. Q. Cox was the legal title holder of the property in question." (Details are stated as to how she acquired such title by July, 1931, through Ray M. Craig, a real-estate broker, acting as her agent in acquiring the title.)

"II. From that time until the year 1934 Ray M. Craig acted as the agent of M. Q. Cox in the handling of the 80 acres in question. He was also her suitor and she reposed full confidence in his actions as her agent, but at no time did she give him express authority to sign her name to deeds or other instruments nor did she have knowledge at the time of making such deeds that he was signing the same.

"III. On September 24, 1931, Ray M. Craig, for a consideration of $1,000, delivered to John W. Howard and Mary Jane Howard, a warranty deed, bearing the signature, 'M. Q. Cox' as grantor, purporting to be acknowledged on September 12, 1931, before Claude N. Cartwright, notary public, and conveying the north ten (10) acres of the tract. The Howard deed was filed for record on September 24, 1931. Likewise, on October 24, 1931, in consideration of the conveyance to Craig of 80 acres of land in Barber county, Kansas, owned by James A. Buckles, Craig delivered to James A. Buckles and Emma E. Buckles, a warranty deed, bearing the signature, 'M. Q. Cox' as grantor, purporting to be acknowledged on October 24, 1931, before Claude N. Cartwright, notary public, and conveying the next twenty acres of the tract. Buckles' deed was filed for record on November 2, 1931. Likewise, on April 19, 1932, in consideration of the transfer to Craig of certain equities in real estate owned by Jester, Craig delivered to E. T. Jester three warranty deeds, each bearing the signature, 'M. Q. Cox,' as grantor, purporting to be acknowledged before Claude N. Cartwright, notary public, on April 14, 1932, and conveying the next three ten-acre tracts. The Jester deeds were filed for record on April 19, 1932. On October 4, 1934, E. T. Jester conveyed, by warranty deed, the ten-acre tract adjoining the Buckles tract on the south, to Charles White, who in turn conveyed to Hazel Johnson, last transferee of the said ten-acre tract. All the Jester deeds were filed for record April 19, 1932. Likewise, on December 9, 1931, Craig delivered to John F. Wilson a warranty deed bearing the signature, 'M. Q. Cox,' as grantor, purporting to be acknowledged on December 6, 1932, before Claude N. Cartwright, notary public, and conveying five acres on the south side of said tract. Charles F. Wilson later conveyed by warranty deed the said five-acre tract to Charles C. Thornburg. The Wilson deed was filed for record December 10, 1931. All of the grantees above named and their grantees in privity have been in continuous possession of the respective tracts since the date of recording the deeds bearing signature 'M. Q. Cox,' as grantor.

"IV. On the trial of the case the court from examination and from testimony of Craig determined that the name 'M. Q. Cox' on each of these deeds was a forgery, placed there by Ray M. Craig, so that this question is disposed of.

"V. During this time Ray M. Craig was engaged in the real-estate business and M. Q. Cox was employed as a secretary in the office of a local lumber company, Buckles inquired of her in regard to the property and she informed him that Craig was her agent and had authority to handle the sale of the 80-acre tract and that he was handling all matters concerning the same. Each of the defendants receiving deeds through Craig took possession of the property in question and in some cases placed fences around the particular acreage. They also paid taxes on the property and leased the property to persons who cut the grass and paid them for the same.

"VI. Late in 1932 M. Q. Cox learned that persons were claiming ownership of portions of the property and Ray M. Craig then stated to her that he had sold all the property except five acres in the southeast corner and five acres in the southwest corner of the tract, and told her that she should not pay any taxes on the land. She, however, paid the taxes on the two 5-acre tracts.

"VII. The other defendants in this case obtained their claims of interests either by deed from one of the grantees mentioned, or by mortgage, or by oil and gas lease. They stand in the same position as the first grantees in the deeds.

"VIII. Miss Cox, during some of the conversations with Craig, had told him not to negotiate sales but to keep the property intact. After learning that some of the defendants were claiming to have an interest in the property, she consulted with Harry Hart, attorney, now deceased, the exact date of which does not appear in the testimony, with reference to what she should do about the property. He did not take any action for her. She was unacquainted with real-estate transactions and on statements of Craig that she should let the matter run, did not do anything until late in 1934, when she and Craig terminated their associations together, both as agent and otherwise. She then had her brother-in-law look up the matter and he, after examining the records, informed her that deeds had been recorded purporting to bear her signature and to be acknowledged by her. The court finds that these deeds were neither signed by her nor acknowledged by her, but that both acts were done by Ray M. Craig. After learning of the deeds she attempted to get the original of the deed held by Reverend Buckles and on June 14, 1934, wrote a note asking for it, but she did not obtain the same. Matters continued to run along as they were until April, 1937, when she had locks placed on some of the gates leading to the tracts that were fenced, which locks were removed by the defendants, she having previously employed the firm of Blase & Blase to investigate and file suit to quiet title, which action was filed on March 18, 1937, which was followed by rejoinders and replies as above stated.

"IX. Miss Cox did not receive any consideration for any of the deeds to which her name was forged.

"X. The defendants have been paying taxes on the portions of the land claimed by them since receiving their purported deeds. They have also received income from the leasing of the tracts of land equal to, or in excess of,

the amounts paid as taxes. Miss Cox has tendered to each of the claiming defendants any sums which may have been expended by them in excess of the income received from the lands.

"CONCLUSIONS OF LAW

"I. The name 'M. Q. Cox' placed upon the purported deeds without authority of the plaintiff, being a forgery, was a criminal act, was null and void, and conveyed no title to the defendants or their successors in interest. Likewise, the signing of the name could not be, and was not ratified.

"II. Under the pleadings and the facts plaintiff is not barred by the statute of limitations or by laches from asserting that the deeds were forged and consequently null and void.

"III. The question is not an issue and the court does not determine in this case whether the defendants are entitled to recover from the plaintiff considerations paid to Craig at the time of receiving the purported deeds.

"IV. Plaintiff is the owner of the property in question and entitled to judgment quieting her title as to each defendant, barring each defendant from asserting right, title or interest in or to the property in question or any right of possession to the same, and for costs herein.

"The above findings of fact and conclusions of law are adopted as the court's findings of fact and conclusions of law in all of the above-entitled cases."

Appellants in their brief express satisfaction with the findings of fact made by the trial court except in one particular. They had requested an additional finding, which the court refused to make, to this effect: (1) That the consideration paid by Howard and Jester for the tracts deeded to them was paid to Ray M. Craig, who failed to account to plaintiff for such payments. We think the findings made cover that point. (2) That Buckles had talked to plaintiff and told her he was trading a farm for part of the 80-acre tract and that Ray M. Craig had requested that he make the deed to the farm to Craig, and that plaintiff at that time agreed the deed should be so made. On this point there was conflicting testimony. There was ample substantial evidence to support the court in refusing to make this finding; indeed it would have supported a finding directly to the contrary. The refusal of the court to make this requested finding may be regarded, when considered with the findings made, as tantamount to a specific finding to the contrary, and as such we find it supported by the evidence.

There is now no contention on behalf of appellants that the deeds under which they claim were executed by plaintiff, or that she authorized anyone to execute them for her, or that she knew of their execution until some time after they were recorded, or that she received any of the consideration paid by any of the appellants to Craig for the deeds.

While ratification by plaintiff of the forgeries of Craig is discussed, appellants make no serious contention that the principle of ratification applies, and it seems quite clear that it does not. (*Howell, Jewett & Co. v. McCrie*, 36 Kan. 636, 14 Pac. 257; *Redden v. Tefft*, 48 Kan. 302, 29 Pac. 157; *Nelson v. Bank*, 105 Kan. 29, 181 Pac. 544.) Appellants rely upon the principle of estoppel of plaintiff to deny the validity of the deeds by reason of laches in failing to take the action demanded by the facts and circumstances of the case. This is an equitable defense. Whether relief is barred by laches depends upon the circumstances of the particular case. (*National Bank v. Walters*, 129 Kan. 49, 281 Pac. 868.) The general rule is one cannot be divested of titles to real property by estoppel *in pais*. (21 C. J. 1201.) To constitute such estoppel there must exist a false representation, or a false concealment, of material known facts from one ignorant of the facts, with the intention that the false representation or concealment be acted upon, and the one to whom they were made must have relied or acted upon it to his prejudice. (21 C. J. 1119.) The facts here do not bring the case within the rule just stated. In *Kirk v. Hamilton*, 102 U. S. 68, relied upon by appellants, the deed sought to be set aside was issued by a marshal or trustee in bankruptcy in a proceeding in which the plaintiff appeared and participated without objection to the sale or issuance of the deed. In *Hazel v. Lyden*, 51 Kan. 233, 82 Pac. 898, the deed sought to be held invalid was issued by the sheriff on an execution from the probate court, and the proceeds of the sale were received by one of two owners of the property who was administrator of the estate in which both were interested. We think these decisions are not applicable. It is true there was delay in bringing this action after plaintiff first learned some facts indicating there was something wrong with her title to the 80-acre tract of land; but in the view of the trial court there were some excuses for the delay, and that alone caused no serious injury to appellants. They argue the delay caused them to lose their cause of action against the notary public because of his false certificate of acknowledgment on the deeds. This is not an action against the notary public, and whether appellants had a cause of action against him, and if so whether it has been lost, cannot be determined here. The trial court saw all the parties, heard them testify, and was more familiar with the conditions than it is possible for us to be. We cannot say as a matter of law that plaintiff was barred or estopped by her laches in bringing the action.

Appellants contend plaintiff's several actions were barred by the two-year statute of limitations (G. S. 1935, 60-306, third clause), which applies to an action for relief on the ground of fraud. Plaintiff's first and primary action was to quiet title. Naturally, a cloud on title to real property, until removed, is a continuing thing, and ordinarily no statute of limitations runs against a suit to quiet title against it. (*Cooper v. Rhea,* 82 Kan. 109, 107 Pac. 799.) A forged deed, regular and valid on its face, and which has been recorded, may be canceled in equity as a cloud on the title of the true owner. (51 C. J. 156.) Ordinarily laches is not a bar to such an action. (51 C. J. 200.) It is true that in a case in which plaintiff, in order to quiet his title, must have set aside some deed or instrument which he had executed, his right to set aside such deed or instrument may be barred by lapse of time, for which reason his action to quiet title is defeated. (*Foy v. Greenwade,* 111 Kan. 111, 206 Pac. 332; *Hinderliter v. Bell,* 114 Kan. 857, 221 Pac. 252; *Pinkerton v. Pinkerton,* 122 Kan. 131, 251 Pac. 416; *Smith v. Rector,* 135 Kan. 326, 10 P. 2d 1077; *Terrill v. Hoyt,* ante, p. 51, 87 P. 2d 238.)

But that is not the situation here. The deeds in question were not executed by plaintiff nor pursuant to any contract she made. She is not attempting to rescind any former action she had taken, or any former contract she had executed.' As to her the deeds were pure forgeries, executed and put of record without her knowledge, and she received none of the consideration paid by the grantees named therein. So the rule frequently applied, that plaintiff must rescind or set aside some former transaction of his, or some instrument he previously had executed, has no application in this case. Inducing one to execute an instrument by fraudulent representation of facts, or as to its contents, ordinarily is not regarded as forgery. (26 C. J. 900.)

Since in the action to quiet title defendants sought to have their titles quieted, the question of which party was in possession did not affect the jurisdiction of the court. (*Walker v. Rooney,* 135 Kan. 158, 9 P. 2d 973.)

Appellants get comfort from the language used in the last three lines of the syllabus in *Keys v. Steele,* 143 Kan. 826, 57 P. 2d 28. The language there used is too broad and sweeping for general application, and as such is disapproved. However, it is not inept if confined to the case then before the court, as it was designed to be. There the original petition clearly attempted to state a cause of ac-

tion for relief on the grounds of fraud. These allegations were carried into the amended petition filed in March, 1934, which added, as a part of the fraud relied upon, an allegation to the effect that the name of one of two signers of deeds, dated in 1906 and recorded in 1914, had been forged. The court correctly treated the matter as an additional allegation of fraud. The cases cited in the opinion (p. 829) did not deal with a case such as we have here. Here the petition is not predicated on fraud. In the first case it contained the usual allegations of an action to quiet title, brought under G. S. 1935, 60-1801, and the petitions in the ejectment actions contained the usual allegations of an action in ejectment where plaintiff claims to be the absolute owner of the property and the defendant wrongfully keeps him out of possession; hence there is no close analogy between *Keys v. Steele,* supra, and the instant case.

Appellants argue forgery is a fraud and that one who seeks to quiet his title clouded by a forged deed necessarily seeks relief from a fraud; hence that his action is for relief on the ground of fraud within the meaning of G. S. 1935, 60-306, third clause. We cannot agree with this view. Here the fraud practiced by Craig primarily was a fraud upon the grantees in the forged deeds. Plaintiff's action was not based upon that fraud, but upon her title to the property, concededly valid before the fraud was committed, and which plaintiff has done nothing to impair. Her action was to have it adjudged that her valid title remains unimpaired by whatever fraud may have been practiced by some of the defendants upon other defendants. The general rule is that when fraud is only an incident to a cause of action a statute of limitations applicable to relief against fraud cannot be invoked in a suit to quiet title or to remove a cloud therefrom. (51 C. J. 200; *Earl v. Lofquist,* 135 Cal. App. 373, 27 P. 2d 416, 419; *Noble v. Martin,* 191 Wash. 39, 70 P. 2d 1064, 1068.)

Appellants' arguments in support of the view that the two-year statute of limitations (G. S. 1935, 60-306, third clause) applies to an action by the owner of property to quiet title as against a forged deed would have the effect of requiring every owner of real property to have the record of his title examined as often as once every two years. We think that is not the meaning of the statute relied upon, or of any of our decisions.

We find no error in the record. The judgment of the trial court is affirmed.