211 P.2d 979

**LOTSPEICH et al. v. DEAN et al.**

No. 5185.

Supreme Court of New Mexico.

Oct. 14, 1949.

Rehearing Denied Nov. 21, 1949.

Donald Brown, Roswell, for appellants.

Hanners & Ward, Lovington, for appellees W. Robert Dean and Mabel Dean, his wife.

COMPTON, Justice.

This is a statutory action to quiet title to certain real property; for accounting, and for partition of interests. The ten year statute of limitations, laches, and other defenses are pleaded. Upon the facts admitted the case was tried and summary judgment dismissing plaintiff's complaint was entered.

The facts are not in dispute and are in substance as follows:

Dudley Lotspeich, by last will and testament, devised to his widow, Margaret Lot-speich, a life estate in 160 acres of land located in Lea County, New Mexico, with the remainder to his children, Everitte D. Lotspeich, Geraldine Lotspeich Newman, Marvin Lotspeich, and his step-children, Johnie Golden and Bert Golden, in equal shares. Marvin Lotspeich was never married and died intestate without issue subsequent to the death of the testator. The appellants were his only heirs at law, and inherited his remainder interest in the 160 acres of land.

On May 8, 1933, Margaret Lotspeich, by deed with general warranty covenants, purportedly conveyed the premises in fee to appellee, W. Robert Dean. At the same time she delivered to him a quitclaim deed bearing date April 28, 1933, purportedly signed by appellants, Everitte Lotspeich and Geraldine Lotspeich Newman, and purportedly conveying their remainder interests in the premises to the said Margaret Lotspeich, but such signatures were forged, and the instrument was not the deed of appellants.

Appellees Dean entered into immediate possession of the premises in 1933, under Mrs. Lotspeich's warranty deed, and at all times since have been in open, notorious, actual, visible, exclusive and uninterrupted possession; and have paid all taxes thereon continuously as they became due.

Appellant Mrs. Newman wrote defendant W. Robert Dean a letter from Dilly,

Texas, on May 17, 1936, that she had never signed "any papers" on the 160 acres of land in suit. Dean wrote to Mrs. Newman on October 26, 1936, stating that he would "be glad to know what she had learned" about the deeds given to him which had been filed of record. Mrs. Newman answered on October 30, 1936, stating that all she knew was that "any deeds or papers with my husband's, brother's, or my name on them are forged." Appellant Everitte Lotspeich wrote appellee W. Robert Dean on May 20, 1936, "I know nothing of the deed I was supposed to have executed on the 160 acres of land." He asked for its date, the particulars of its recording, and the name of the notary who, it appeared, had taken his sister's and her husband's acknowledgements; and agreed when received he would investigate the matter. But the record is silent as to whether the matter was further pursued.

This correspondence establishes only the fact that the quitclaim deed in question was a forgery as to appellants' names appearing thereon as grantors, and that the appellants and appellees Dean knew in 1936 that it was a forgery.

Prior to this correspondence the appellees Dean believed they had a fee simple title to the property by virtue of the warranty deed from Mrs. Lotspeich purporting to convey to them such title.

This suit was filed in 1947, after appellees Dean had been in possession of the property fourteen years, and eleven years after the appellants and appellees Dean had knowledge that the quitclaim deed was a forgery.

The Lotspeich will was duly admitted to probate in the county court of Palo Pinto County, Texas, on February 17, 1925 in Cause No. 1469 entitled In the Matter of Estate of Dudley Lotspeich, Deceased, and that a certified copy of all the probate proceedings thereon was recorded on May 8, 1933 at 3:00 p. m. in Book 10 of Misc. Records at page 335 in the office of the County Clerk of Lea County, New Mexico.

So far as the record shows the life tenant under the will is living.

The appellants requested appellees Dean to admit certain facts; among which was the following: "That the purported signatures of 'Geraldine Newman' and 'Everett Lotspeich' which appeared on the original of a purported quitclaim deed dated April 28, 1933 and recorded on May 8, 1933, at 3:00 P.M. in Book 2 of Deed Records at page 511 in the office of the Lea County Clerk, were not the signatures of the plaintiffs, Everitte D. Lotspeich and Geraldine Lotspeich Newman, and were in truth and in fact, forgeries."

The appellees refused to admit the truth of this statement, thus making an issue of

fact as to whether the quitclaim deed involved here was a forgery.

The trial court entered its summary judgment, in which it is stated:

"And the Court, having considered the argument of counsel, and being fully informed and advised in the premises, finds that the complaint, answer of Dean defendants, requests for admission of facts and the replies thereto and the supporting affidavit attached to said motion show that there is no genuine issue as to any material fact, and the Court is of the opinion that the motion for summary judgment is well taken as to all three grounds thereof, and that the defendants are entitled to a judgment as a matter of law.

"It Is Therefore Ordered that the motion for summary judgment be and the same hereby is sustained as to all three grounds thereof, and as to all defendants.

"It Is Further Ordered, Adjudged And Decreed that the plaintiffs' complaint, and all causes of action thereunder, be and the same hereby is dismissed with prejudice."

The court was of the opinion that the issue made regarding whether the quitclaim deed was a forgery was not a "genuine issue as to a material fact." In other words, it held that it was not a material fact whether the deed was or was not a forgery. In either case appellees were entitled to a summary judgment.

We must and do assume for the purposes of this appeal that the quitclaim deed is a forgery; and have so stated the facts. If so treating it, we should conclude that appellants should recover, the case must be reversed.

The trial court concluded that appellees' motion for summary judgment should be sustained upon each of the three grounds asserted; that is, (1) the appellants' claim was barred by the ten year statute of limitations; (2) that it was barred by the four year statute of limitations which has application to actions for relief on the ground of fraud; (3) that appellants are barred from affirmative relief by their laches.

The Deans were in possession of the land in suit for more than ten years, under a deed which purported to convey to them the land in fee, and paid all taxes as they became due. If, therefore, their possession was adverse to the appellants the ten year statute of limitations has barred appellants' right to recover in this action.

We are of the opinion, however, that the Dean possession was not adverse, and that the trial court erred in sustaining the appellees' motion for a summary judgment, in that the appellants' claim was not barred by either the ten year (Sec. 27-121, N.M.Sts. 1941) or four year (Sec. 27-104, N.M.Sts. 1941) statute of limitations, or by their laches; assuming as the trial court did that the quitclaim deed was a forgery. If this deed

had been genuine, limitations and laches would not be involved. We will now state our reasons for this conclusion:

It is a general rule, to which there are exceptions, that until the remainderman is entitled to the possession of the premises by the death of the original life tenant the possession of the life tenant or his grantee holding under a deed purporting to convey the fee, is not adverse; and statutes of limitation do not start to run against him until the death of the life tenant. Content v. Dalton, 122 N.J. Eq. 425, 194 A. 286, 112 A.L.R. 1031; Superior Oil Corp. v. Alcorn, 242 Ky. 814, 47 S.W.2d 973; 31 C.J.S., Estates, § 66; 33 A. J. "Estates" Sec. 187.

"In actions to recover possession of land or to establish title to interests therein brought by the owner of a legal estate which is or at one time was a future interest, the statutory period does not commence to run before such estate becomes a present interest unless

"(a) the future interest was created by the owner of an interest against whom the statutory period had already commenced to run (see Sec. 226); or

"(b) the future interest is or was barrable by disentailing or similar conveyance (see Sec. 227); or

"(c) The landlord and tenant relationship is involved between the parties." Restatement of Law of Property, Sec. 222.

Illustrations under this section are as follows:

" * * * f. In cases within the rule stated in this section, since the owner of the present estate is entitled to possession and the owner of the future estate is not, no adverse possession by the former against the latter is possible, until the future interest becomes a present interest. It is immaterial that the present owner claims a larger interest under color of title, or informs the future owner that he claims an estate in fee simple absolute, or does both. The statutory period commences to run against the owner of the future estate as soon as such estate becomes a present interest, whether this occurs by expiration of the preceding estate by its own limitation or by the happening of some event causing the future estate to take effect as an executory interest.

*   *   *   *   *   *

"5. A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B for life, remainder to C and his heirs.' B purports to transfer an estate in fee simple absolute in Blackacre to D. D believes in good faith, but erroneously, that he has an estate in fee simple absolute in Blackacre and so informs C. B dies. In an action by C against D to recover possession of Blackacre the statutory period is computed from the date of B's death."

See Zaring v. Lomax, 53 N.M. 273, 206 P.2d 706; Greenbaum v. Harrison, 132 Md. 34, 103 A. 84; Pineland Club v. Robert, 4 Cir., 213 F. 545; Russell v. Tipton, 193 Ky. 305, 235 S.W. 763; Carr v. Barr, 294 Mo. 673, 243 S.W. 98; Adkins v. Hackworth, 279 Ky. 352, 130 S.W.2d 774; Allison v. White, 285 Ill. 311, 120 N.E. 809; Bishop v. Johnson, 242 Ala. 551, 7 So.2d 281; Ashbaugh v. Wright, 152 Minn. 57, 188 N.W. 157; Smith v. Maberry, 148 Ark. 216, 229 S.W. 718.

So far as the record discloses, Mrs. Lotspeich is alive, and under the general rule stated the appellants' rights are not barred by the ten year statute of limitations.

The appellees seem to agree that our statement of the general rule is correct; but assert that this case presents a well recognized exception thereto. They state:

"We do, however, seriously object to the application of this general rule to the facts in the case at bar. Where, as in the case at bar, there has been an ouster and disseizin of the remainderman, the rule does not apply. That is it does not apply where the person in possession holds not under the title of the life tenant, but holds possession adverse and hostile to the remainderman and notice is brought home to the remainderman of such hostile claim. Under such circumstances, the possession is adverse to the remainderman and the statute of limitation runs.

"Here, as we shall hereafter set out in detail, there was an ouster and disseizin of the remainderman in either the year 1933 or 1936, with notice of the hostile claim brought home to the remainderman. * * * "

When the Deans went into possession under the deed from Mrs. Lotspeich they had only a life interest that would terminate at Mrs. Lotspeich's death, and appellants and their brother had the remainder in three fifths of the land; notwithstanding the Deans' ignorance of the infirmity in the title.

Neither the Deans nor appellants knew that the quitclaim deed was a forgery until 1936, three years after the Deans purchased the life interest in the property. Both the deed from Mrs. Lotspeich to the Deans and the forged quitclaim deed were color of title to the remainder, but unless the Deans held possession adversely to appellants the statute of limitations did not start to run. The fact that someone forged the appellants' names to the quitclaim deed which was delivered to the Deans by Mrs. Lotspeich, and by them placed of record, added nothing to their title. We stated in Mosley v. Magnolia Petroleum Co., 45 N.M. 230, 114 P.2d 740, 748: "See also the following cases, in each of which it was held that a forged instrument and its record are utterly void, and its record is not constructive notice, 2 Devlin on Deeds 3d Ed., Sec. 726; Scheer v. Stolz, 41 N.M. 585, 72 P.2d 606; and one who purchases relying upon

the record alone, though without knowledge of the invalidity of the instrument, is not protected as an innocent purchaser, Catto v. Hollister, 39 N.D. 1, 166 N.W. 506, though the deed had been of record for years with the owner's knowledge, Meley v. Collins, 41 Cal. 663, 10 Am.Rep. 279; Pom.Eq.Jur., 3d Ed., Sec. 918; Chandler v. White, 84 Ill. 435; Stone v. French, 37 Kan. 145, 14 P. 530, 1 Am.St.Rep. 237; Com'rs Court of Henderson County v. Burke, Tex.Civ.App., 262 S.W. 94; West v. Houston Oil Co., 56 Tex.Civ.App. 341, 120 S.W. 228; Chamberlain v. Showalter, 5 Tex.Civ.App. 226, 23 S.W. 1017; Kypadel Coal & Lumber Co. v. Millard, 165 Ky. 432, 177 S.W. 270; Gulf Coal & Coke Co. v. Alabama Coal & Coke Co., 145 Ala. 228, 40 So. 397."

The status of the title to this property in 1936 was that the Deans owned a life estate in the three-fifths interest in the 160 acres of land and appellants owned the remainder. The Deans at that time knew these facts. Their only claim of title was through the deed from Mrs. Lotspeich which conveyed only the title possessed by the grantor, notwithstanding it purported to convey the fee; and notwithstanding the Deans thought the deed conveyed to them a title in fee, until informed of the true facts in 1936. The cases cited are conclusive on this question.

The principal case on the question is Superior Oil Corp. v. Alcorn, 242 Ky. 814, 47 S.W.2d 973. It is relied on as authority by both sides, and each has quoted copiously from it to support their respective contentions. As we approve its doctrine, we will rely largely upon it in support of our views on this question.

If, as appellees claim, the ten year statute of limitation began to run against the rights of appellants in 1936, then at that date the life estate terminated and appellants had the right of entry. Appellees state, "They (the appellants) have not shown they are entitled to possession (though we consider that they were entitled to such possession from the time of the notice of the ouster and disseizin until the statute of limitations finally ran)."

Appellees state, "We shall hereafter set out in detail that there was an ouster and desseizin of the remaindermen in either 1933 or 1936, with notice of the hostile claim brought home to the remaindermen." The following are the details which the Deans claim constituted ouster, disseizin and a repudiation of the life estate.

(1) That the recording of the forged quitclaim deed and deed from Mrs. Lotspeich, together with an oil and gas lease given to an oil corporation, and a mortgage, both executed in 1945, constitute an ouster and disseizin of which "the appellants had imputed knowledge of the claim of title made by the Deans."

(2) That the correspondence between the appellants and the Deans "clearly shows the claim Robert Dean was making to the property, and that full knowledge of his claim and the nature of it was brought home to the appellants * * * that this correspondence did amount to an ouster in 1936. * * * Notice was brought home to the remaindermen in 1936 (presumably by the correspondence), that the Deans were claiming the entire fee title to the property under both the Lotspeich deed and the forged quitclaim deed.

(3) That as the appellants failed to exercise their statutory right to quiet their title, the general rule does not apply.

We answer these claims as follows:

The recording of the Lotspeich deed did not affect the title, as we have seen. The deed conveyed only a life estate. The quitclaim deed was a nullity, as was its record, and it did not give constructive notice of anything. Mosley v. Magnolia Petroleum Co., supra. There is no evidence that there was a mortgage or oil lease executed by the Deans on the property, and we cannot assume there was. But if there were, it does not follow that the recording of such an instrument is proof that the Deans repudiated the life estate, and claimed title under the forged quitclaim deed, and "brought home to appellants" such repudiation. On this question we quote from the Alcorn case as follows [242 Ky. 814, 47 S.W.2d 984]:

"The contention is made that, *when a life tenant, while holding as such, brings home to the remaindermen, by clear and convincing evidence, notice of his intention to claim the entire estate in fee, the statutes of limitations start running eo instante.* Is that the law? Is that enough? * * *

"The thing sought to be accomplished is to bar the plaintiffs' cause of action, by making it appear they have had a cause of action for many years, in fact for such a number of years, that, having failed to assert it during all that time, its assertion is now barred by the statutes of limitations; therefore it follows this notice must be sufficient to have given the plaintiffs a cause of action."

Such is the situation here.

"To start the statute running against a remainderman, one apparently a life tenant must bring home to the remainderman such notice of the basis of his adverse holding as to indicate to a reasonably prudent man that the life tenant has repudiated his life tenancy, no longer claims thereunder, and is basing his holding upon some other and adverse claim of title, and that the remainderman then has a right of entry because of the resulting acceleration of the remainder.

* * * * * *

"When we find that time when the Alcorn heirs could first have put an end to the possession of those claiming under Leroy Alcorn, then we have found the time the statute began to run. That time was May 30, 1919, when the last breath went out of Leroy Alcorn. Then, and not until then, the running of the statute started. * * *

" * * * and no matter how often, how loudly, how long, or how openly he proclaims himself to tbe the absolute proprietor, his estate is not thereby enlarged, Salmons' Adm'rs v. Davis, 29 Mo. 176. The protection of the remainderman is not limited to a mere presumption, the possession of the life tenant is not adverse, it cannot by any possibility become adverse. The life tenant must cease to be life tenant, must renounce that relation, must do enough to accelerate the remainder and bring home to the remainderman by clear and convincing evidence notice that he has done so and is holding under another and adverse title before his possession can become adverse to the remainderman. It is such other estate that then becomes adverse, not the life estate.

\* \* \* \* \* \*

"Therefore an apparent life tenant who expects to claim the fee must disclose that intention to the remainderman, and must advise him of the nature of his title, must disclose the basis of his claim. The apparent life tenant may have concluded in his own mind his holding under his undisclosed claim or title will be adverse to the title of the remainderman, but it is not sufficient for him to merely notify the remainderman his holding is adverse. * * *"

It is obvious that the appellees had claimed the whole title, until 1936, and may have continued to claim it; but "no matter how often, how loudly, how long, or how openly they proclaimed themselves to be the absolute proprietors, their estate was not thereby enlarged." Alcorn case, supra. They must go further and cease to be life tenants, renounce that relation, bring it home to the appellants by actual notice of the renunciation, and disclose that they claimed under some other and different source of title. No such renunciation was made, nor can we conceive of appellees doing so, as the fee title to the three-fifths interest in the land would have immediately vested in appellants, with right to possession. Assuming that they would ultimately have secured title by limitation if they had renounced title to the life estate, obtained through the Lotspeich deed; that was a chance no reasonable person would take, knowing the facts as the Deans knew them.

The Deans could not repudiate the life tenancy until they were informed that such was their title, which was in 1936. At that time they knew that they owned only a two-fifths interest in fee and a life estate in three-fifths of the land, and that appellants owned the remainder. Until they

repudiated this title, so that appellants had a right of entry and possession, the statute of limitations could not run against appellants' title. The mere recording of the deeds, and the execution of a mortgage and an oil lease on the land, if made, did not amount to a repudiation or renunciation of the life estate conveyed to the Deans by the Lotspeich deed. See the cases heretofore cited and the following: Jefferson v. Bangs, 197 N.Y. 35, 90 N.E. 109, 134 Am.St.Rep. 856; Stein v. White, 109 Ohio St. 578, 143 N.E. 124; Ashbaugh v. Wright, supra; Barrett v. Stradl, 73 Wis. 385, 41 N.W. 439, 9 Am.St.Rep. 795; Livingston v. New York O. & W. R. Co., 193 App.Div. 523, 184 N.Y.S. 665; Rae v. Baker, Tex. Civ.App., 38 S.W.2d 366; Allison v. White, 285 Ill. 311, 120 N.E. 809.

The correspondence relied upon as a renunciation of the life estate, had no such effect. Its substance is set out in our statement of facts, in which we summarized as follows: "This correspondence establishes only the fact that the quitclaim deed in question was a forgery as to appellants' names appearing thereon as grantors, and that the appellants and appellees Dean knew in 1936 that it was a forgery." This was in no sense a renunciation of the life estate.

It is asserted that the general rule does not apply in this case, because the appellants failed to exercise their statutory right to quiet title after they knew of the forgery.

But this question has so generally been decided against appellees' contention that we content ourselves by quoting from Restatement of the Law of Property and citing authorities. "Comment d. Actions to recover possession—Effect of a right of action to establish the title while the interest is still future. Frequently the owner of a future interest as such can establish his ownership by a suit in equity to quiet title or to remove a cloud upon title or by analogous statutory proceedings, legal or equitable. It might be reasoned that this fact should require him to avail himself of these rights of action and that the statutory period should thenceforth run, not only upon these equitable and statutory proceedings, but also upon the action of ejectment which might be brought when the interest becomes present. However, these equitable and statutory proceedings are considered to be created for the additional protection of the owner of the future interest; and to hold that their existence causes the statute of limitations to run upon ejectment proceedings would in considerable measure reduce the protection accorded to the future interest holder when his estate becomes present. It is therefore immaterial in computing the statutory period in an action of ejectment or similar proceeding that, before the plaintiff's estate became a present interest, he could have

brought suit to quiet title or to remove cloud on title or could have commenced a statutory proceeding analogous to one of these." Restatement of Property, Vol. II, Sec. 222, Comment d. Superior Oil Corp. v. Alcorn, supra; Huey v. Brock, 207 Ala. 175, 92 So. 904; Kidd v. Borum, 181 Ala. 144, 61 So. 100, Ann.Cas.1915C, 1226; Maxwell v. Hamel, 138 Neb. 49, 292 N.W. 38; Fairlie v. Scott, 88 Fla. 229, 102 So. 247; Cox v. Watkins, 149 Kan. 209, 87 P.2d 243; Clark v. Parsons, 69 N.H. 147, 39 A. 898, 76 Am.St.Rep. 157. The Deans' possession was never adverse to appellants' interest.

The Iowa Supreme Court seems to hold to the contrary. Garrett v. Olford, 152 Iowa 265, 132 N.W. 379, and Ward v. Meredith, 186 Iowa 1108, 173 N.W. 246. But the doctrine of these cases has been criticised. Maxwell v. Hamel, supra.

The trial court erred in holding that the ten year statute of limitations barred appellants' claim of title.

Appellees assert that appellants' cause of action is barred by the four year statute of limitation (Secs. 27-104, 27-106, N.M.Sts.1941), which has reference to actions brought for relief on the ground of fraud. This statute has application to the ordinary action based upon fraud, such as suits to rescind contracts brought about by false representations of the defendant. It has no application to suits of this kind, in which the fraud charged was a collateral matter. Here the quitclaim deed is a forgery. An exact case is Johnston Realty Corp. v. Showalter, 80 Cal.App. 176, 250 P. 289, 291 in which the California court said: "It is claimed by appellant that the defendant's right to hold her interest in the land, as against the deed to Julia S. Johnston, is barred by the statute of limitations, because the alleged fraud was discovered by her more than three years prior to the commencement of this action. But the defense herein, or the defendant's demand to have his title quieted against the plaintiff, is not based upon any allegation that Mrs. Fouch was fraudulently induced to execute a deed. Defendant's contention is that Mrs. Fouch never executed any deed conveying or purporting to convey to Mrs. Johnston Mrs. Fouch's one-half interest in the land. The fraudulent alteration was a thing apart from any act of Mrs. Fouch. It was neither more nor less than a forgery. Considered in that light, the alterations were no more effective than they would be if the entire instrument was forged. The statute of frauds has no application to these facts. The same is true of the doctrine of laches, invoked by appellant as a bar to defendant's claim of title."

Another case directly in point is Cox v. Watkins, 149 Kan. 209, 87 P.2d 243, 247, in which it was stated: "Appellants argue forgery is a fraud and that one who seeks to quiet his title clouded by a forged deed necessarily seeks relief from a fraud;

hence, that his action is for relief on the grounds of fraud, within the meaning of G.S.1935, 60-306, third clause. We cannot agree with this view. Here the fraud practiced by Craig primarily was a fraud upon the grantees in the forged deeds. Plaintiff's action was not based upon that fraud, but upon her title to the property, concededly valid before the fraud was committed, and which plaintiff has done nothing to impair. Her action was to have it adjudged that her valid title remains unimpaired by whatever fraud may have been practiced by some of the defendants upon other defendants. The general rule is that when fraud is only an incident to a cause of action a statute of limitations applicable to relief against fraud cannot be invoked in a suit to quiet title or to remove a cloud therefrom. 51 C.J. 200; Earl v. Lofquist, 135 Cal.App. 373, 27 P.2d 416, 419; Noble v. Martin, 191 Wash. 39, 70 P.2d 1064, 1068." Also see Ricketts v. Hahn, 72 Ohio App. 478, 53 N.E.2d 202; Cooper v. Rhea, 82 Kan. 109, 107 P. 799, 29 L.R.A.,N.S., 930, 136 Am.St.Rep. 100, 20 Ann.Cas. 42; Earl v. Lofquist, 135 Cal. App. 373, 27 P.2d 416; Noble v. Martin, 191 Wash. 39, 70 P.2d 1064. The trial court erred in holding that appellants' cause of action is barred by the four year statute of limitation.

The court likewise erred in holding that the appellants' right of action was barred by laches. Obviously this can't be true, as they never had a right of entry or to possession until the appellees had renounced their life estate, and this they did only by their answer in this case. It follows that if the quitclaim deed in question is a forgery, then the appellants are entitled to recover on the facts stated. On the other hand, if the quitclaim deed is genuine then the appellants' complaint should be dismissed. It is apparent that the question of fact as to whether the quitclaim deed is a forgery is material to a decisions of this case. The trial court erred in entering a summary judgment.

The cause will be reversed and remanded with instructions to the trial court to set aside its judgment and proceed to the trial of the case in accordance with the views of this Court as stated here.

It is so ordered.

BRICE, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.

### On Motion for Rehearing

COMPTON, Justice.

It is asserted on motion for rehearing that the theory of this court that appellants were only remaindermen and not entitled to possession, fails to take into account that appellants sued as owners in fee simple, entitled to possession, and not as remaindermen. The statements of the

court referred to by appellees were in answer to their claim that the cause of action was barred by statutes of limitation which began to run in 1936. It may be that something did occur later that accelerated the remainder into a fee-simple title; but, if so, it does not appear in the record.

There are two answers to this contention; first, it appears from appellees' answer that they do claim the entire title and thereby brought it to the attention of the appellants; and second, if necessary we will treat the complaint as amended by the facts in evidence. Mesich v. Board of County Com'rs, 46 N.M. 412, 129 P.2d 974, 977. In that case we said: "The appellee asserts that as appellants had plead that they had a fee simple title to the property, they could not claim to be the owners of a less estate. But the question of ownership was litigated, and this court will treat the pleading as having been amended to conform to the proof. Lopez v. Lucero, 39 N.M. 432, 48 P.2d 1031."

So far as the evidence shows, the appellants are remaindermen, and that was our conclusion. However, it would seem that in the trial of the case the pleadings might be amended to show when, if at any time, the appellees had repudiated the title and brought it to the attention of the appellants in the manner the law requires.

The second contention is as follows: "Certain statements in the decision should be modified or re-phrased in order not to be possible of misconstruction or to be unduly prejudicial to appellees in a trial on the merits."

It is said under this second point, that the following statement in the opinion should be modified:

"It follows that if the quitclaim deed in question is a forgery, then the appellants are entitled to recover *on the facts stated.*" (Emphasis ours.)

We find nothing wrong with this statement. Our intention is clear. On the facts *as stated by us in the opinion,* the appellants are entitled to judgment *if the deed is a forgery.* It may be that the facts on the trial of the case will be different; and if so the result might be different.

But to make the matter plain, the case is to be tried anew and the result is to be determined by the evidence. The law, as laid down in the opinion, will be the law of the case. We see no reason to change any of our phraseology.

We did not state, as appellees assert, that the life tenant was living. We stated, "So far as the record shows the life tenant under the will is living." Nor do we find, as asserted by appellees, that we have "drawn an entirely different conclusion from the factual matters than that

made by the trial court." The only difference between this court's conclusion and that of the trial court is on questions of law.

We adhere to our opinion and the order therein made. The trial court, however, may allow such amendments of pleadings as the parties may desire. The motion for rehearing is denied.

BRICE, C. J., LUJAN, SADLER, and McGHEE, JJ., concur.